# SYLVANUS ARTHUR RILEY v. CITY OF INDE-PENDENCE, Appellant.

### Division One, June 2, 1914.

1. **NEGLIGENCE: Cities: Operation of Industrial Plant: Liability.** A city which undertakes to operate a municipal electric light plant must assume the same responsibilities as private citizens and corporations engaged in a like business.

2. ———: ———: **Electric Light Plant: Defective Switchboard: Sufficient Evidence.** Where plaintiff, employed by the city in the operation of its electric light plant, and charged with the duty of switching the electric load from one engine to another, shows a faulty construction of the switchboard, a faulty insulation in the iron connections between the wires and the switch handle, and that the shock and burning he received when with his hand he undertook to switch the load could have been occasioned by these faults, in conformity with his petition, he makes out a case for the jury against the city.

3. ———: **Switchboard: Condition Two Weeks After Accident.** Where plaintiff was injured as he touched the handle of an electric switchboard, and there was a wooden switch box, fastened to the back of the marble slab by an iron band, in which were the terminal wires fastened down by little blocks of wood and nailed to the side of the box by brads, and where (1) the blocks with the brads had been taken off and nailed back by the superintendent two days before the accident, (2) the front of the switch was charged with electricity from the time of the accident till an examination made two weeks later, (3) thereafter, after the block, with the brads, was entirely removed the switch worked with safety, and (4) it was shown that the switch had not been tampered with between the time the brads were changed and their removal, it was not error to permit a witness to testify as to the condition in which he found the brad when the switch was examined two weeks after the accident. His testimony that "the brad looked as though it had het and burned off and grounded on the end" was not without probative force by reason of the lapse of time.

4. ———: **Hypothetical Question: All Facts.** A hypothetical question which does not embody all the facts will not be error, if the other facts are given in other questions asked.

5. ———: **Instruction: General in Terms: Specific Proof.** An instruction which is general in its terms is not reversible error, if the proof covers only the specific matters complained of in the petition—and that must be the holding although the rule is that the instructions must be within both the pleadings and the proof.

6. ———: ———: **No Evidence.** It is not error to refuse an instruction to support which there is no foundation in the facts proven. If all the evidence tends to show that whatever defect was in the switch by which plaintiff was injured was there prior to the time he went on duty on the night on which the injury occurred, and there is no evidence tending to show any change in its defective condition after that time, it is not error to refuse an instruction exculpating defendant if the switch was in a safe condition when plaintiff went on duty and thereafter became unsafe.

7. ———: **Excessive Verdict: Two Hands: $10,000.** A verdict for ten thousand dollars, where plaintiff was a comparatively young man earning $65 per month, and as a result of the burning by electricity the muscles and tendons are drawn and the condition is permanent and he has practically lost the use of both hands, is not excessive.

8. ———: **Jurors: Misconduct.** The judgment will not be reversed on the ground of misconduct on the part of two jurors, in that they visited and examined the electric light plant where plaintiff was injured, if they testify that they were out walking and passed by the plant and looked in, but did not go in or make an examination, and the question of their misconduct was considered upon evidence by the trial judge, who found it not a sufficient ground for a new trial.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*J. F. Thice* and *W. S. Flournoy* for appellant.

(1) The testimony failed to show that the alleged defects in the switch caused the injury, and the demurrer to the testimony should have been sustained.

Sexton v. Street Railway Co., 245 Mo. 254. (2) The testimony of the witness Ryan as to the condition of the switch two weeks after the accident, and that after the accident he operated the switch with a stick, was incompetent for the reason that there is no testimony showing that the apparent melted condition of the end of one of the brads was caused at the time of plaintiff's injury, or was in any way the cause of plaintiff's injury. (3) Plaintiff's instruction number one is entirely general as to acts of negligence with reference to the switch in question, makes no mention of, or reference to, the specified acts of negligence alleged in the petition, and permitted the jury to find on any general grounds of negligence they might imagine. This was error. Strode v. Box Co., 250 Mo. 695; Beave v. Transit Co., 212 Mo. 331; Newlin v. Railroad, 222 Mo. Mo. 375; Waldhier v. Railroad, 71 Mo. 514; Abbott v. Railroad, 83 Mo. 271; Gessley v. Railroad, 26 Mo. App. 159; Maynard v. Railroad, 155 Mo. App. 352; Gibler v. Railroad, 148 Mo. App. 475. (4) The court below erred in refusing defendant's instruction number nine. In view of the fact that the switch had worked properly up to the time of the accident, it is natural to presume that some sudden disarrangement of the mechanism of the switch caused the injury. (5) The verdict was excessive and the lower court committed error in allowing it to stand. Brady v. Railroad, 206 Mo. 509; Newcomb v. Railroad, 182 Mo. 687; Partello v. Railroad, 217 Mo. 645; Clifton v. Railroad, 232 Mo. 708; Norris v. Railroad, 239 Mo. 695; Lessenden v. Railroad, 238 Mo. 247; Briscoe v. Street Railway, 222 Mo. 104; Yost v. Railroad, 245 Mo. 219; Farrar v. Met. Street Railway, 249 Mo. 210; Marriott v. Railroad, 142 Mo. App. 193; O'Flanigan v. Railroad, 145 Mo. App. 276; Burdict v. Railroad, 123 Mo. 221; Stoelze v. Transit Co., 188 Mo. 581. (6) Going to the building of the defendant, where the accident oc-

curred, by two of the jurymen during the trial was such misconduct as to entitle the defendant to a new trial, particularly in view of the fact that there had been an entire change in the particular portion of the ma- · chinery in question.

*John W. Clements* and *Paxton & Rose* for respondent.

(1)    Ryan's testimony as to the condition of the switch ten days after the accident was admissible, the switch in the meantime having been kept in place, filled with oil, and not touched by anyone.    (2)    Plaintiff's instruction number one was correct, because the evidence supported the allegations of the petition and did not show any negligence beyond it, so that there was no occasion for the instruction to cut out any other theory that may have crept into the case.    (3) Plaintiff's instruction number one at most amounted to mere non-direction, and if defendant wanted further instruction it should have asked for it.    Boyd v. Railroad, 249 Mo. 131; Johnson v. Traction Co., 161 S. W. 1193; Meily v. Railroad, 215 Mo. 587; Shroeder v. Transit Co., 111 Mo. App. 77; Althoff v. Transit Co., 204 Mo. 171; Morgan v. Mulhall, 214 Mo. 461. (4) The damages allowed were not excessive.    Smith v. Fordyce, 190 Mo. 1; Dougherty v. Railroad, 97 Mo. 647; Waldhier v. Railroad, 87 Mo. 37; Porter v. Railroad, 71 Mo. 71; Chitty v. Railroad, 166 Mo. 443; Hollenbecker v. Railroad, 141 Mo. 113; Lyons v. Railroad, 161 S. W. 726; Henderson v. Kansas City, 177 Mo. 477.

GRAVES, J.—The city of Independence is the owner of a municipal light plant. For something over two years the plaintiff had been one of its employees, and had charge of this light plant at night. Plaintiff was not an expert electrician, but his duties were

to fire the boiler and run the engine at night. He was so engaged August 18, 1909. There were three engines, and as the use of lights in the city decreased toward the morning hours, the plaintiff's duty was to switch the thus lightened load from the larger to the smaller engine. In so doing, at about one a. m. of August 18, 1909, he received a shock and was fearfully burned in and about his hands and other portions of the body. For the damages thus arising he sued the city, and in his petition charges negligence in this language:

"About one o'clock a. m. on the said eighteenth day of August, plaintiff was alone in said electric light plant and in the discharge of his duties as such engineer undertook to throw a switch transferring the arc light from the larger to the smaller engine. To do this plaintiff had to take hold of a switch which controlled the lamps on the arc circuit. When he touched the handle of the switch for the purpose of transferring the load to the other engine he received a powerful shock which passed through his body, and plaintiff knew no more until about half an hour later he became conscious and found himself suffering greatly from severe burns on both hands and wrists and both arms and upon one hip. Plaintiff says that said current of electricity passed through said switch and into his body because of the negligence of defendant in the following particulars, to-wit:

"The switch handle furnished by defendant to be taken hold of by plaintiff was defective and was not properly insulated, the same being an ordinary shovel handle with much iron exposed and no insulation thereon, and to said shovel handle without insulation was attached an iron pointer which rested between and touched iron guides above. Said iron guides were attached to an iron plate which rested against an upright marble slab. This plate was not bolted to the marble slab, but was held in place by iron bolts which passed through the slab and connected with

an iron frame which went around a wooden box which formed part of the switch and contained the electric connections of the same. This construction was negligent and defective, because if an electric current passed into the said iron frame then such current would pass from such iron frame through the said bolts attaching it to the said iron plate, and if such iron plate or any of the guides upon it were then touched by said metal pointer the current would pass into the body of anyone who touched the metal on said switch handle; and there was always danger that a current might escape from the live parts of the switch or its connections into the said iron frame. The distance between the said iron frame and the electric connections, contacts and terminals in said switch, which carried the electric current, did not exceed one inch, whereas the distance should have been much greater to prevent the passing of the electric current to said iron frame. Defendant was negligent in so constructing the said switch, since it greatly increased the hazard of an electric current passing into said iron frame and thence into the body of any person who touched the said switch handle; and this would not have been the case if said iron plate had been fastened directly to the marble slab without any metallic connection with said iron frame. The currents used by defendant in said switch were powerful, of high tension, and dangerous, and the switches in the plant were known or should have been known to defendant to be dangerous and to require caution in their construction to prevent danger from electric currents proceeding therefrom. Defendant was therefore under obligations to use great care in insulating said switch and was negligent in not fastening said iron plate directly to said marble slab, or otherwise insulating the same. A few days before the accident complained of defendant's superintendent took down the switch upon which plaintiff was injured and took off a wooden block which held

in place a flat piece of metal which conveyed the current that went from the north dynamo to the switch. This block was nailed on the inside of the said box over said flat piece of metal. In putting back said wooden block said superintendent negligently fastened it in place by steel nails which he drove into the side of the wooden box toward the iron frame which went around the outside thereof. Said nails were too long and one or more of them were carelessly and negligently driven so as to touch said flat piece of metal carrying said electric current or so as to be but a short distance from it and so as to pass through said wooden box and to touch or to come close to the said iron frame, so that contact was made by said nail between said flat piece of metal and said iron frame, or else they were thereby brought so close together that a current could leap from the flat piece of metal to one of the nails and from thence to said iron frame on the outside of the said box. Plaintiff states that he does not know whether the current got to said iron frame by way of one of the nails negligently driven in putting back said wooden block or by jumping from the terminals, contacts or connections of said switch to said iron frame, but believes and alleges that the current got to said iron frame in one of these two ways, and says that in either event the accident complained of and the injuries resulting from it were caused by defendant's negligence as herein set forth in not properly insulating said switch handle and in leaving a metallic connection between said iron frame and said iron plate which rested against the said marble slab. Said switch was constructed by defendant's superintendent, and its defects were known to defendant or could have been known to it by the exercise of ordinary care and reasonable inspection on its part in time to have prevented the said accident and the injuries to plaintiff resulting therefrom."

In the answer of the defendant we find (1) a general denial, (2) assumption of risk, and (3) a plea of contributory negligence.

Reply was a general denial.

There was a judgment for plaintiff in the sum of $10,000, and from this the defendant appeals. The appellant assigns the following errors:

"The court below erred.

"First. In not sustaining defendant's demurrer to the testimony.

"Second. In admitting incompetent evidence offered by the plaintiff.

"Third. In giving plaintiff's instructions numbers one and two.

"Fourth. In refusing defendant's instruction number nine.

"Fifth. In permitting the verdict for ten thousand dollars to stand, the same being excessive.

"Sixth. In not granting a new trial on account of the misconduct of the two jurymen who went to the plant during the trial."

All of these are urged in the brief, some with more vigor than others. Of these in order, together with the pertinent facts.


I. In our judgment the demurrer to the testimony was properly overruled. There was evidence tending to show a negligent construction and maintenance of this switch. It was constructed and maintained by the city, and knowledge of its defects must be assumed.

The switch was thus constructed:

**Negligence: Electric Switch: Case for Jury.** The front of the switch was an upright marble slab (supposedly a non-conductor of electricity), and on the front side of the marble slab was fastened an iron plate (called in the brief the finger plate), and projecting therefrom were three points, guides or fingers. Beneath this

iron plate and through the marble slab was a hole through which came a fiber rod (a non-conductor), and to it was attached a spade handle made mostly of iron, and next to the fiber rod was an iron pointer. Counsel for respondent thus describes the working of the switch.

"To work the switch, you took hold of the spade handle, pulled out the fiber rod, put the iron pointer between fingers one and two and pushed it down between the fingers, so that the pointer was held firm on the finger plate. This made a certain connection. To change, you took hold of the spade handle, pulled out the fiber rod till the iron pointer cleared the fingers, and then you pushed down the iron point between fingers two and three. This made another connection. Then, finally, to change, you took hold of the spade handle, pulled out the fiber rod and pushed down the iron point between fingers three and four. This made the third connection. Thus we see that the sole object of the finger plate was to support the fingers which held the iron pointer on the fiber rod in place."

Going to the back of the marble slab for the remainder of the construction, we find that there was a wooden switch box made of about three-fourths inch material, which box was filled with oil. In this box were the terminal wires fastened down by little blocks of wood about one-fourth of an inch in thickness, and nailed to the inside of the box by nails or brads about one inch in length. This box, with its deadly wires, was fastened to the back of the marble slab by an iron band which was bolted on by two bolts one at either end. These bolts ran through the iron band, the marble slab, and the iron finger plate in front. The brads or nails which held the thin blocks of wood over the electric terminals or wires in the box, were very close to the wires, and being an inch in length, either touched or came very near touching the iron band. From this it will be seen that the electricity had but a short

jump to make from the terminal wire to the brad, and from the brad to the iron band, and thence through the bolts to the iron finger plate in front, and through it by a full iron connection to the switch handhold, used in switching the current as above described. Some two weeks after the accident the switch was taken down and examined, and it was found that one of those brads or nails in the little block of wood looked like it had been melted off at the end as if by electricity. Plaintiff contended that the evidence shows the accident to have occurred in the manner above described, i. e., that the current jumped from thence to the iron band, and thence through the bolts to the front of the switch, after which it had an easy route to plaintiff's hand when he undertook to change the load from one engine to another. Plaintiff contends that the walls of the wooden box should have been thicker, and the brads driven in further from the terminal wires. He also contends that had the city used four bolts instead of two, the current could not have gotten from the back of the switch to the front. In other words, he says that the iron plate on the front of the marble slab should have been bolted on with two bolts, and then the iron band, which held the wooden box, should have been bolted on with two other bolts, but so arranged that they would only bolt the band to the marble slab, without touching the iron plate in front.

For the plaintiff the testimony tends to show a faulty construction of the switch in the particulars named, and a faulty insulation, and it further tended to show that the accident could have been thus occasioned. At this point it should also be stated that whilst the evidence shows the switch had been operated for months without trouble, yet the evidence for the plaintiff further shows that on the Sunday before this accident on Tuesday, this particular switch was taken down by the superintendent, one of these little blocks over the terminal wires was taken off, and then

nailed back on, so that there might have been a changed condition to what there had theretofore been. This evidence the testimony for the defendant contradicts. The evidence further shows that just after the accident the switch front was charged with electricity, and it was this that caused it to be removed and examined some two weeks after the accident, at which time the melted brad was found. It is sufficient to say that the evidence for the plaintiff upon the negligent construction and maintenance of the switch was such as to permit that question to be passed upon by the jury. Not only so, but his evidence was such as to permit the jury to find that the accident was due to the negligence aforesaid. The demurrer was not well taken, and the court committed no error in refusing it. Cities undertaking to run the lighting business must assume the same responsibilities as private persons and private corporations running like plants. Public agents may not be as careful as those selected by private persons and responsible to private persons, but this does not change the rule of law. The first contention we rule against the defendant.

II. Nor is there substance in the point that the trial court erred in admitting improper evidence for the plaintiff. First, it is said that the court should not have permitted the witness Ryan to testify as to the condition in which he found this nail or brad, when the switch was examined two weeks after the accident. This witness says the brad looked as though it had "het" and "burned off, grounded on the end." He also testified that after this block with the brads was removed the switch worked with perfect safety. The principal point is that the condition of the brad two weeks after the accident does not tend to show its condition at the time of the accident. The evidence was not without probative force by reason of the lapse of time, and such matter was for the jury. We must

not overlook the three facts (1) that the block with the brads had been taken off and nailed back the Sunday before the accident, (2) that from the accident up to the examination two weeks later the front of the switch seems to have been charged with electricity, and (3) when the block, with the brads, was entirely removed the difficulty did not again appear. Further, that it was shown that the switch had not been tampered with between these dates. There was no error in Ryan's testimony.

It is next urged that Henrici, the expert electrician, who testified for the plaintiff, was permitted to state improper matters. Such matters are thus pointed out in the brief. They point out three questions and three answers and urge error. These are:

"Q. If a nail were driven, a one-inch brad were driven through the block, we call the block '1-C,' into the box surrounding the switch, how near would it have to get to the iron band around the switch to cause a shock or to communicate the current to the iron band?    A.    The distance that a nail would have to be from this band to communicate a current to it would depend on the condition of the wood and the substances absorbed in the wood. It would arc across over a space in excess of an eighth of an inch."

It is obvious that these questions sought expert knowledge. It is urged that all the facts are not embodied in the questions. It must be remembered that these questions are selected from a series of questions propounded to this expert. In other questions the other facts were given. Under the circumstances the questions were proper. The second contention of the defendant must, therefore, fail.

III. One of the serious questions in this case is the giving of instruction numbered one for the plaintiff. Defendant urges that the court erred in giving both instructions one and two for plaintiff. There was

**Instruction in General Terms.** no error in instruction numbered two. It is a very usual instruction on the measure of damages and need not be further noted. Instruction one reads:

"The court instructs the jury that it is conceded in the evidence that defendant employed the plaintiff to work the electric light plant which the defendant was operating, and if you find from the evidence that it was the duty of the defendant, in the course of said employment, to throw a certain switch, transferring the arc lights from one engine to another, then it was the duty of the defendant to so insulate and construct said switch as to make it reasonably safe for the plaintiff to throw the same, and if you find that the defendant negligently failed to so construct and insulate said switch as to make it reasonably safe for the plaintiff to throw, and that the defective condition of said switch was known to defendant, or could have been known to it had it exercised reasonable care in the construction and inspection of said switch, and if you further find that by reason of the failure, if any, to so construct and insulate said switch, the said plaintiff, on August 18, 1909, in the performance of his duties as the employee of defendant, and without negligence on his part, undertook to throw the said switch, and a current of electricity passed into the body of plaintiff, inflicting the injuries complained of, then your verdict must be for the plaintiff."

The objection urged is that the instruction is too general in its terms, under the pleadings in the case. It is urged that the petition pleads specific negligent acts, and the instruction is so general in terms as to allow the plaintiff to recover for other negligent acts than those pleaded. We think that the instruction is subject to the criticism made. When the plaintiff relies upon specific acts of negligence, he must recover, if at all, upon these acts of negligence, and none other. This is a rule of long standing in this State. Not

only so, but instructions should not be broader than the pleadings—i. e., they should not present matters for determination, not charged in the pleadings. And if, perchance, the pleadings are broader than the proof, the instructions must not be brroader than the proof, although the pleadings would justify broader instructions had the proof fully measured up to the pleadings. The rule is that the instructions must be within both the proof and the pleadings. But does it follow from all this that his case should be reversed for this defect in the instruction? We think not. The jury could not have been misled by the general terms of the instruction, because the proof in the case covered only the specific matters complained of in the petition. Had the proof gone beyond the specific matters mentioned in the petition we would have had a different proposition entirely. But here the proof was confined strictly to the negligent acts charged in the petition, and the jury therefore had before it no other negligent act to consider. Under these circumstances we do not think that this instruction was misleading or in anywise injurious to the defendant. Error without injury is not reversible error. This contention we rule against defendant.

IV. It is next urged that the court erred in refusing defendant's instruction numbered nine which reads:

Instruction: No Evidence. "If the jury finds from the evidence that defendant's switch, its appliances, bearings and equipments were reasonably safe and secure at or about seven p. m. of the day before plaintiff's injury, and that thereafter on said day while being used by defendant for its purposes, if you find it was so used, said switch, its appliances or equipment or bearings became out of repair, thereby causing parts of said switch to be charged with electricity, and that plaintiff was injured by coming in

contact with said charged part of said switch and was thereby injured, still plaintiff can not recover in this action unless you further find in the evidence that defendant knew of said switch, its bearings, appliances and attachments so becoming out of repair, or by the exercise of reasonable care might have known thereof in time to have repaired the same before plaintiff sustained the injury.''

It will be sufficient to say that there is no foundation in the facts shown to authorize the giving of this instruction. It proceeds upon the theory that the evidence tends to show the safety of this switch at the particular hour of seven p. m. of the day before plaintiff was injured. There is no evidence showing any change in the switch from seven p. m. to one a. m. when the accident occurred. All the evidence tends to show that whatever defect there was in the switch was there prior to the hour named in the instruction. We do not deem the refusal of this instruction error.

V. It is next contended that the verdict is excessive. Under our more recent rulings we do not think so. The plaintiff was, comparatively speaking, a young man and was earning $65 per month. Under his evidence and that of the physicians testifying for him, he has practically lost the use of both hands. The tendons and muscles were burned and destroyed, and the doctors say that the condition is a permanent one. We recall no case where we have passed upon a verdict for the particular loss of both hands, yet the reasoning in the following cases, would sustain this verdict: Smith v. Fordyce, 190 Mo. 1; Dougherty v. Railroad, 97 Mo. 647; Chitty v. Railroad, 166 Mo. 1. c. 443; Lyons v. Railroad, 253 Mo. 143; Clifton v. Railroad, 232 Mo. 708; Lessenden v. Railroad, 238 Mo. 247; Waldhier v. Railroad, 87 Mo. 37.

*Excessive Verdict.*

The practical loss of both hands is a serious injury to one required to do manual labor for life's necessities. The amount of the verdict will not authorize us to disturb it.

VI.   Lastly it is urged that there was misconduct upon the part of two of the jurymen.   The misconduct charged was that the two jurymen visited and examined the light plant prior to their verdict.   The jurymen say that they were walking and passed by the plant and looked in, but did not go in or make an examination.   The whole matter was threshed out upon evidence before the trial court, and we believe the conclusion reached by the trial court was sustained by the evidence.

From it all we are impressed that there was no serious error in the trial of this cause, and the judgment *nisi* should be affirmed.   It is so ordered.   All concur.