FRANK W. CLIFT v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—9 S. W. (2d) 972.

Division Two, July 20, 1928.

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.,* for appellant.

*Douglass & Inman* for respondent.

DAVIS, C.—This is an action under the Federal Employers' Liability Act for damages for personal injuries sustained through the alleged negligence of defendant. Plaintiff, a carpenter and a member of a crew engaged in repairing a bridge on an interstate railroad, was being carried to his work on a motor car, furnished by defendant for that purpose, when he was knocked from the car by a claw bar, alleged to have been negligently loaded on the motor car. The jury awarded plaintiff the sum of $10,000, and defendant appealed from the judgment entered on the verdict.

The evidence most favorable to plaintiff warrants the finding that, on June 5, 1924, plaintiff was a member of a crew of workmen engaged in restoring and repairing a bridge on the main line of defendant, running from St. Louis, Missouri, to Texas. The bridge spanned a dry creek in the State of Oklahoma, known as Crum Creek.

796

Plaintiff was a second-class bridge carpenter. The crew lived in bunk cars, which were moved from locality to locality as the work required. On the day mentioned the bunk cars were stationed at or near Stanley, Oklahoma, a distance of about four miles from the bridge on which the crew was then working. Defendant furnished a motor car, similar to the by-gone hand car, to carry the crew and the tools incident to the work from the bunk cars to the bridge and back again. The motor car was about six feet in length, and we assume approximately the same in width. Lengthwise through the center of the car, a raised platform was constructed, which was from a foot and a half to two feet in width, and from twenty to twenty-four inches in height, which was used as a seat by members of the crew while riding thereon. On both sides of this seat, also lengthwise of the motor car, were built trays in which tools were placed to be carried to the work. The trays were ten or twelve inches in width, extending the full length of the motor car, and were three to four inches in depth. The floor of the motor car constituted the base of the trays, while strips of wood formed the ends and sides.

On the morning of June 5, 1924, as the bridge crew was being carried to work on the motor car, plaintiff sat and rode at the left-hand corner thereof, with his right foot on the transverse rod at the front of the car and with his left foot on the side rail of the tray. The motor car was then running on the main track of the railroad. While the motor car was in motion, running from twelve to fifteen miles an hour on its way from the bunk cars to the work, about 8:35 A. M., a claw bar, which was being carried with the other tools in the tray on the left-hand side, slid forward between plaintiff's legs and fell from the front of the car and struck a tie, and then rebounded, striking plaintiff on the hip and causing him to be thrown from the motor car and injuring him. Plaintiff stated that he did not see the claw bar and did not know it was slipping until an end struck him and threw him off.

On the day in question it was plaintiff's duty to provide the drinking water. A keg was used for that purpose. Just before the motor car started to the work, plaintiff went for the water. While he was getting the water, the other members of the crew placed the motor car on the track and reloaded some tools that had been taken from the car the evening before in order to more conveniently lift it from and to the track. On returning plaintiff found the motor car ready to start. Thereupon he placed the water keg on the right front corner of the motor car and passed around in front of it, seating himself at the left front corner, facing the direction in which the motor car was to travel. The foreman instructed him to keep watch for an extra train that was expected. It was the custom and practice in

loading the tools and trays to place the heavy tools, including the claw bars, on the floor in the tray, but instead of loading the tools thus at this time. the claw bar which fell was lying at or near the top on other tools and on or among ropes, which tools were piled up on the left-hand side, some ten inches above the sides and ends of the tray, so that it could and might slide off. A witness stated that he had never seen claw bars loaded this way before, and that they had always been placed at the bottom of the tray. The motor car was usually started from the left side, but on this occasion it was necessary to reach the carburetor from the rear to start the car. While the workmen, on the evening before, loaded the tools on the car at the place of work indiscriminately, plaintiff stated that he loaded a jack and water keg only. As they were nearing the place of work on the morning plaintiff was injured, the claw bar fell from the front, causing plaintiff to fall therefrom and derailing the motor car, which ran over plaintiff. Plaintiff stated that he did not see the claw bar that fell.

The evidence tended to show that the claw bar suddenly slid from the top of the tray on the left-hand side, and, after hitting a tie, rebounded. and first struck the man sitting immediately back of plaintiff and then struck plaintiff. and threw him from the car. Plaintiff stated that he was not told to watch the tools, but his instructions were to watch for the extra train that was expected on that track. The foreman, a witness for defendant, stated that he did not know that the claw bar was loaded on the ropes, but that, if it was loaded on the ropes above the tray, there would be danger of its slipping off. Plaintiff at the time was thirty years of age and had been in the employ of defendant for about three years. The evidence further shows that the crew had been working at this point a day or so only, and that previous to this time the tools had been carried on what was called a trailer or push car, hauled by the motor car. The tools carried consisted of shovels, picks, wrenches, aligning bars, claw bars, ropes, track jacks, pulling jacks, etc. Nine or ten men, including the foreman, comprised the crew, all of whom were on the motor car at this time, and five of whom, including plaintiff, sat on the left-hand side. Plaintiff stated that his attention was directed to the track, and that if he had looked he could readily have noticed and observed the tools and claw bar, but that the duty to watch the tools was placed upon others, and that he did not notice or see the tools. Other pertinent facts, if any, will appear in the opinion.

798

I. The cause of action is grounded on the Federal Employers' Liability Act and no contention is made that it is inapplicable. At the close of plaintiff's case and at the close of all the evidence, through instructions filed, defendant moved for a directed verdict. This was on the ground that defendant's negligence was not developed. It argues that the evidence establishes that the tools were not negligently loaded on the motor car. To support its position Nichols v. Railway, 225 S. W. (Mo. Sup.) 679, is cited. In that case the facts show that the tools were loaded on the motor car as was ordinarily done. The case under consideration, however, presents a very different situation, for the tools and equipment were piled some ten inches above the top of the tray provided for holding the tools. The claw bar, which was the cause of the accident, was deposited on or near the top of the heap, on or among ropes, and above the sides and ends of the tray. In this position it was likely and liable to slide and fall from the front of the car. A finding that it did fall and knock plaintiff from the car, derailing it, is warranted by the evidence. The custom, practice and proper method of transporting the claw bars and other heavy tools was to deposit them on the floor of the tray. To permit the claw bar to ride at the top of the heap, while the motor car was running on the railroad tracks, was unusual, and therefore evidence of negligence. The foreman's evidence is unequivocal that he knew that so depositing a claw bar at the top of the heap of tools was dangerous. As a vice-principal in charge of the work, it was his duty to see that the tools were carefully and prudently loaded for the journey. In addition, he designated others to watch over the tools during the transportation, and the evidence shows that they were derelict in that duty. We cannot say that the danger was so apparent as to charge plaintiff with knowledge of it, or that it was so remote as to absolve the defendant. These two issues were properly submitted to the finding of the jury.

In Hook v. Railroad, 116 Kan. 556, 227 Pac. 531, a case of almost the identical facts, it was developed that a track laborer, riding on a motor car, was thrown from it by a lining bar falling, one end of which hit the end of a tie, causing the other to fly up and strike the laborer in the back, and the court held that the evidence supported a finding of negligence on the part of defendant in failing to see that the tools were properly loaded on the car.

In Railroad v. Hall, 167 Ky. 819, 181 S. W. 629, an aligning bar, deposited on a pile of overalls and raincoats about eighteen inches high, slipped from the car and struck a tie, one end of which struck plaintiff on the breast and threw him from the car, and the court

held, in effect, that so loading the aligning bar was evidence of negligence. [See, also, Robie v. Railroad, 100 Atl. (Vt.) 925; Cabanaro v. Railroad, 197 Ill. App. 465.]

II. On the ground that the evidence develops that plaintiff assumed the risk, the defendant again contends that the court should have directed a verdict for it. The rule by which we are guided, found in Railroad v. Hall, supra, is stated thus: "While a servant assumes the risks ordinarily incident to his employment, he does not assume the extraordinary risks, or those growing out of the negligence of the master, unless the conditions causing the accident and the danger therefrom are known and appreciated by him, or are so obvious that an ordinarily prudent person, under the circumstances, would have observed and appreciated them."

The evidence most favorable to plaintiff shows that, on the evening previous, just before starting the run to the bunk cars, plaintiff loaded on the motor car a keg and a jack. On arriving at the bunk cars that evening, some of the tools were unloaded. The next morning just before proceeding to the bridge, the other workmen lifted the motor car to the tracks and loaded the tools thereon, while plaintiff went for a keg of water. On returning he placed the keg on the right-hand side of the car and, going around it, took his seat at the front left-hand corner of the motor car which immediately started, and from thence his attention was directed to watching for the extra train. While he could easily have noticed and observed the tools if he had looked, he stated that he did not notice or observe them.

We do not think that plaintiff may be charged, as a matter of law, with knowledge and appreciation of the condition of the tools on the car, or that the danger was so obvious that an ordinarily prudent person would have observed and appreciated it. He was entitled to rely on the prudent and careful loading of the tools by the defendant and its vice-principal, whose duty it was to see that the tools were properly loaded. Under the evidence he could not be charged, as a matter of law, with the duty of inspection, nor could he be required to anticipate that the motor car was improperly loaded. Other witnesses, some of them put upon the stand by defendant, stated that they did not notice or observe the condition of the heap of tools except that they were piled above the tray. The issue of whether plaintiff assumed the risk was, under the facts and circumstances in this case, for the jury. [Hook v. Railroad, supra; Railroad v. Hall, supra; Railroad v. De Atley, 241 U. S. 310; Railroad v. Proffitt, 241 U. S. 462.]

800

III. Error is charged as to plaintiff's Instruction One, because it is not supported by substantial evidence of negligence and because it ignores the defense of assumption of risk. Our ruling on the propriety of a directed verdict disposes of the question that the instruction was not supported by substantial evidence of negligence.

With respect to the second contention, the record advises that the court gave to the jury in behalf of defendant an instruction involving assumption of risk. The question consequently arises as to whether assumption of risk is an element of plaintiff's case. The answer goes no further than averring that plaintiff assumed the risks ordinarily incident to the employment. We held in Dixon v. Frazier-Davis Construction Co., 298 S. W. 827, citing cases, that assumption of risk in confutation of the master's negligence may be shown under a general denial. The answers in that case and this case merely refuted defendants' negligence, that is, they were tantamount to allegations that defendants were not negligent, which fact may be shown under a general denial. Therefore the requirement in the instruction that the jury find that the defendant's employees loaded the claw bar at the top of the tools and that there was danger of its sliding off and that it was negligence constrained the jury to find defendant was negligent before plaintiff could recover. The instruction covered this phase of assumption of risk.

It was said in Patrum v. Railroad, 259 Mo. 109, l. c. 121, 168 S. W. 622, "We have here in Missouri, whether logically or illogically we need not here pause to discuss, come to use the term 'assumption of risk' to express the mere hazards which appertain to a dangerous avocation when unaffected by the negligence of the master. When, however, the servant enters into or remains in the service of the master with actual or constructive knowledge of defects arising from the master's negligence and without a promise of remedy, we speak of this in our Missouri courts as contributory negligence." The assumption of risk that is tantamount to contributory negligence must be pleaded affirmatively and with such particularity as contributory negligence is pleaded. Assumption of risk of this kind is not an element of plaintiff's case. Consequently, plaintiff's principal instruction need not require a finding that plaintiff did not assume the risk, if the defendant's instruction given to the jury covers that point, for, with this situation obtaining, the instructions taken as a whole properly submit to the jury the question of assumption of risk. [Heigold v. Railway, 308 Mo. 142, 271 S. W. 773.] The contentions are disallowed.

IV. Defendant complains of Instruction Two for plaintiff as confusing and misleading and as improperly declaring that plaintiff

was not required to perform the duty imposed on him by law to exercise care for his own safety. The instruction, after summarizing the facts in the answer pleaded as contributory negligence on the part of plaintiff, reads:

"The court, however, instructs you in this connection that if you find from the evidence in this case that it was no part of plaintiff's duty to watch the claw bar, or to see that the tools were properly loaded, and that he had nothing to do with the loading of the claw bar or tools on the car at the time he was injured, if so, and that he did not know that the claw bar was loaded so that it was apt to slide off, if so, then plaintiff was not required to exercise ordinary care in order to see whether or not the claw bar, or other tools, was loaded in a reasonably safe and secure manner, and to watch said claw bar to see if it was sliding off of the motor car, if so, but that under these circumstances, if these were the circumstances, plaintiff had a right to assume that the tools, including the claw bar, were loaded in a reasonably safe and secure manner so that the claw bar would not slide off the motor car unless the danger of the claw bar sliding off the motor car, if there was such danger, was known to plaintiff or was so open and obvious that a reasonably prudent person in placing the water keg on the car and riding on it where plaintiff was riding, and in the performance of his duty, would see the claw bar and know and appreciate the danger, if any, of it sliding off."

Defendant contends that the instruction relieved plaintiff of the duty of exercising ordinary care for his own safety. The portion complained of reads, "that if you find from the evidence in this case that it was no part of plaintiff's duty to watch the claw bar, . . . then plaintiff was not required to exercise ordinary care . . . to watch said claw bar to see if it was sliding off the motor car." It is said that the instruction undertakes to tell the jury that, if it was no part of plaintiff's duty to watch the claw bar, then he was not required to exercise ordinary care, thus depriving defendant of the benefit of its pleaded defense of contributory negligence. We are unable to perceive that defendant was deprived of such defense. Defendant's answer, inferentially at least, placed upon plaintiff the duty to watch the claw bar and charged him with negligence in that regard. The instruction merely tells the jury that, if they find that plaintiff did not know that the claw bar was loaded so that it was apt to slide off and that it was no part of his duty to watch the claw bar, then he was not required to exercise ordinary care to watch said claw bar to see if it was sliding off the car. Defendant's answer was predicated on plaintiff's actual or implied knowledge of conditions. The instruction merely tells the jury that, if plaintiff did not have actual or implied knowledge of conditions as they existed

and was subject to no duty to ascertain conditions, then he could assume that defendant had performed its duty as to safe conditions. It is said in Westover v. Railroad, 6 S. W. (2d) l. c. 847: "But he was not obliged to use even ordinary care to discover dangerous defects resulting from his employer's negligence." We do not find the instruction subject to the faults averred. [Johnson v. Brick Co., 276 Mo. 42, 205 S. W. 615.]

V. Defendant complains of plaintiff's instruction on the measure of damages. After summarizing the elements the jury were authorized to consider in determining the amount of damages, in the event they found for plaintiff, the instruction says:

"The court also instructs you in this connection that if you find from the evidence that the injury, if any, sustained by plaintiff was caused in part by the negligence of defendant, if any, and in part by the negligence of plaintiff, if any, then you will deduct from the total amount of damages, if any, sustained by plaintiff such sum as you find from the evidence will be equal to the proportion which said negligence, if any, bears to the causal negligence of both plaintiff and defendant."

Defendant contends that the instruction does not conform to the rule of comparative negligence on the subject found in the Federal Employers' Liability Act, in that it does not advise the jury that the full damages suffered by plaintiff must be diminished in the proportion that the negligence of the employee bears to the combined causal negligence of both the master and the employee. We think the instruction complies with the rule recited and with the ruling in Seaboard Air Line v. Tilghman, 237 U. S. 499. See also Westover v. Wabash Ry. Co., 6 S. W. (2d) 843.

VI. Defendant complains of the action of the trial court in refusing to give to the jury two instructions requesting the withdrawal from them of two assignments of negligence. The first instruction related to the assignment of negligence, which the trial court submitted to the jury. To have withdrawn the assignment would have constituted error. Our determination of the efficacy of a directed verdict disposes of this contention.

The second instruction asked the court to withdraw from its consideration the second assignment and to instruct the jury that plaintiff is not entitled to recover upon the charge of negligence that defendant knew, or with the exercise of ordinary care could have known, or should have anticipated, that the claw bar was about to

fall off in front of the motor car and negligently failed to place it in a secure position where it could not fall. Both plaintiff and defendant admit that plaintiff abandoned this assignment of negligence, and only undertook to submit to the jury the first assignment.

The record seems to be clear that plaintiff voluntarily abandoned the assignment of negligence sought to be withdrawn by the second withdrawal instruction by failing to submit the assignment by instruction. [Unterlachner v. Wells, 296 S. W. 755; Reith v. Tober, 320 Mo. 725.] Upon the abandonment by plaintiff of an assignment of negligence pleaded in the petition, the court may properly give a withdrawal instruction relating to the abandoned assignment, provided it does not affect the assignment of negligence properly submitted to the jury. That the second withdrawal instruction would have affected the assignment of negligence submitted, and would have confused the jury, is, at the least, doubtful. Inasmuch, however, as the jury was limited by the instructions given to the consideration of the findings therein hypothesized, we do not think the refusal of the instruction in this instance harmful or prejudicial. [Reith v. Tober, supra.]

VII. It is said that the verdict is grossly excessive. The evidence clearly develops that plaintiff has permanently lost the use of his right arm and hand. He is unable to use the arm and hand in his work. He cannot bring his hand to his mouth or reach his shoes with it. He cannot close his hand or grip with it, although there is some movement. One doctor stated that the arm was paralyzed. In addition, there were numerous injuries to his head, limbs, and feet. While in the hospital he had to keep his leg on a pillow for ten days. He had to undergo two operations with respect to his arm, one at Paris, Texas, and the other at the Frisco Hospital at St. Louis. During his confinement at the hospitals and subsequently, he suffered severe pain. For a time he was unable to walk. He remained in the Texas hospital for seventeen days and some time at St. Louis. The alignment of the fragments of the bone is not perfect. The muscles of his arm have atrophied. The scars on the arm and the shin run into the tissues. The arm is useless practically from the shoulder down. His ability to do work with his hand, to grip, there is very little of it. In view of his injuries and condition, we are unable to say the amount of the verdict is unreasonable.

In view of our conclusions, we affirm the judgment. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.