Hugh Doyle, Administrator of Estate of Peter Doyle, v. St. Louis Merchants Bridge Terminal Railway Company, Appellant. —31 S. W. (2d) 1010.

Division Two, October 13, 1930.

*J. L. Howell* and *Roy W. Rucker* for appellant.

*Mark D. Eagleton, John F. Clancy* and *Hensley, Allen & Marsalek* for respondent.

DAVIS, C.—This is an action under the Federal Employers' Liability Act by an employee of defendant to recover against it damages for personal injuries. The jury returned a verdict in plaintiff's favor for $40,000, but as the court ordered a *remittitur* of $15,000 as a condition precedent to the overruling of defendant's motion for a new trial, plaintiff filed a *remittitur* in that sum, which resulted in the overruling of said motion. Thereupon judgment was entered for $25,000 in plaintiff's behalf, and defendant appealed.

The evidence adduced on behalf of plaintiff warrants the finding that the accident occurred about two-thirty o'clock in the afternoon on November 13, 1924. He was in the employ of defendant, and was then engaged in lighting switch lamps in the terminal yards of defendant at Venice, Illinois. His age was on said day forty-five

years, and his wages $3.12 a day. There were about 150 switch lamps to be lighted, and, in order that all the lamps might be lighted before darkness came on, he began his duties in that regard on said day about twelve-thirty P. M. These lighted lamps were necessary to the handling of freight and traffic in the yards, and to provide signals for the main track over which interstate traffic passed. These switch lamps were from a foot and a half to two feet above the ground. He had been performing his duties for about two hours, and, at the particular time of his injury, he was proceeding to lamps on the main track to light them. Plaintiff's general work was that of track laborer, but at this time and for the space of a week, due to the regular lamp lighter's illness, he was designated as a substitute for him and was thus engaged in said duties. On a previous occasion he also had acted as lamp lighter for a period of a week.

The physical situation of the terminal yards at the place plaintiff suffered injuries may be described thus: Two railway tracks existed, one a main-line track and the other a drill track, both of which ran generally north and south. The drill track was east of the main track. A space of eight or nine feet obtained between the two tracks. This space was ordinary earth or ground, and was beaten smooth and hard. It was used by switchmen and other employees, day and night, as a pathway. The ground sloped from the drill track to the main track, which latter track was about a foot lower than the former.

Plaintiff ordinarily would finish lighting the lamps about four o'clock in the afternoon. He was walking northwardly between the drill track and the main track to light main-track lamps, and was from four to four and a half feet from the main track. When he started no train was moving on either of the tracks, but there was a train called the "drag" on the main line. This drag started to move to the north as he was going over. He testified:

"Q. Now, will you tell us what you were doing—how you got hurt—tell me that? A. Well, I was walking north, going to light these other lamps; I saw this piece of wire in sort of a loop, it was about three inches out of the ground and about fourteen inches long, and my intention was as I got to the wire to stoop down and remove it, as required by good railroading, so no one would have to step on it or be in danger, and I went sideways to pick up the wire, when a sharp whistle blew from an engine on the drill track to my right, and as I moved over to get out of the way of this engine, which was almost upon me, my right foot caught in this piece of wire and I fell over under the wheel.

"Q. Fell where? A. Under the wheels of the car.

"Q. Under the wheels of what car? A. Left foot—the track of the main line to my left.

"Q. Now, this wire, can you describe to us how it was embedded in the ground there? A. Both ends seemed to be pretty tight in the ground—solid ground.

"Q. What was the appearance of the wire there? I mean, what kind of a wire was it? A. Something like a hay wire—an old, rusty wire.

"Q. And the ground in around the ends where the wire was located, how was that ground with reference to whether it was trampled or not? A. Yes; it was trampled upon, showing the wire had been there at least several days."

He stated that he had never seen this before this occasion. He was five or six feet away from it when he first saw it. He intended to remove it, but when he came to a point about three feet away from it, a train on the drill track whistled sharply, causing him to look around to observe the direction of the train. The whistle startled him, causing him to step to the left or west in an effort to get out of the way of the train on the drill track because of danger of something dragging from the train, that is, the car doors or something of that sort: He stepped that direction to keep in the clear. As he thus stepped, his foot caught in the loop of the wire and he fell under the train running on the main track, which cut off his foot, causing further amputation. When the whistle blew, he was close to the wire and was just about to pick it up. The east and west ends of this wire were embedded in the ground and extended about three inches above the surface. This loop of wire was at right angles with a path along which plaintiff was proceeding. In performing his work on previous days plaintiff followed the same general course of travel, varying his course slightly according to the presence and the situation of trains and cars on the tracks. Other pertinent facts, if any, will be adverted to in the opinion.

I. It is said by defendant that the trial court erred in refusing its instructions, offered at the close of plaintiff's evidence and at the close of the whole evidence, directing a verdict in its favor. This contention is based on two postulates: first, the failure of the evidence to warrant a finding that defendant was negligent; second, the assumption of the risk by plaintiff.

Defendant avers that the evidence wholly fails to develop that defendant had prior notice or knowledge, either actual or constructive, of the existence of the wire embedded between the tracks, which tripped plaintiff. The evidence warrants the finding that the loop of wire, over which plaintiff tripped, causing him to fall with his foot under the train's wheel, was embedded in the ground on defendant's property, between the drill track and the main track, in a passageway used by defendant's employees in connection with their work.

Plaintiff, in proceeding from lamp to lamp, was not limited to a defined or specific route or path, but his pathway varied somewhat according to conditions confronting him. As he was then going to a lamp, he was within the scope and course of his duties. Moreover, in commencing and intending to pick up the wire, as it was within the path that he was likely thereafter to use in accomplishing his work, he acted within the scope of his employment in making an attempt to remove the obstruction, where it might thereafter, as the result of inattention or forgetfulness, prove dangerous to himself or other employees. This conclusion is fortified by his statement that the removal of the wire was required by good railroading, as that tended to show that defendant authorized the removal of obstructions under such circumstances. The inference that the wire was a dangerous obstruction was permissible. [Baltimore & Ohio R. Co. v. Flechtner, 300 Fed. 318; Lock v. Railroad, 281 Mo. 532, 219 S. W. 919.]

The wire was rusty and old and was securely embedded in ground that had become solid and smooth, as the result of user and the elements, we may infer. This was evidence that the wire had been there for a sufficient length of time to permit an inference that defendant at least had constructive notice or knowledge of its existence. It thus had ample time to have discovered and removed it before plaintiff's injuries occurred. [Baltimore & Ohio R. Co. v. Flechtner, 300 Fed. 318; Kramer v. Power & Light Co., 311 Mo. 369, 279 S. W. 43.] Moreover, in answer to a question as to the condition of the grounds around the ends of the wire, plaintiff answered: "It was trampled upon, showing the wire had been there at least several days." Even though we could say that the statement of the witness was a conclusion and not a statement of the conditions, yet, as the statement was admitted without objection, it was not without probative value. [Riley v. City of Independence, 258 Mo. 671, 167 S. W. 1022.]

II. It is said that plaintiff's testimony that, as he stepped to the west, he caught his toe under the wire which caused him to fall so that his left foot was mangled by the cars is so out of harmony with  the physical facts as to deprive his statement of weight or credence. It is argued that, in catching his foot under the wire as he stepped to the west, we must judicially notice that his head would have fallen to the west towards the train instead of his feet. We cannot say as a matter of law that plaintiff's history of the manner of the occurrence was untrue or impossible. We know from common knowledge that inexplicable happenings do occur. Unless we can say that the evidence was opposed to the immutable laws of physics, we cannot declare it to be fiction. We cannot say that the evidence

lacked weight or credence. The courts are reluctant to say that declared facts are manifestly impossible or untrue. [Schupback v. Meshevsky, 300 S. W. 465; Laudwig v. Power & Light Co., 24 S. W. (2d) 625, l. c. 626.]

III. The case that most appropriately states the rule of assumption of risk is Gila Valley Ry. Co. v. Hall, 232 U. S. 94, l. c. 101, 102. The rule as there enunciated reads: "In order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety; or else such danger must have been so obvious that an ordinarily prudent person under the circumstances would have appreciated it." [Boldt v. Railroad, 245 U. S. 441; Ches. & Ohio Ry. Co. v. De Atley, 241 U. S. 310; Erie Railroad Co. v. Purucker, 244 U. S. 320; Clift v. Railroad, 320 Mo. 791, 9 S. W. (2d) 972.]

It is evident that plaintiff knew of the existence of the wire or defect in the pathway before him, but it is also evident, we think, that plaintiff cannot be held, as a matter of law, to have known and appreciated, under the facts and circumstances herein, that the loop of wire endangered his safety, or that the danger from it was so obvious that an ordinarily prudent man under the circumstances would have appreciated or contemplated the result. He was about to attempt to remove an obstruction of potential danger. Nothing appeared in the situation before him as he made the attempt to remove it to show that he was in peril. It was the sharp whistle of the engine on the drill track that startled him and his reaction to it was that he was in danger from a train on the drill track. At that moment he was in a place where his duties called him, nevertheless subject to the duty of exercising ordinary care for his own safety. In a position of danger from a train on the drill track, as he thought when the whistle startled him, the fact that he erred in judgment and moved in a direction that caused him to trip on the wire does not charge him, as a matter of law, with knowledge that the loop of wire embedded in the ground endangered his safety or that the danger was so obvious as to be appreciated. [Frankel v. Hudson, 271 Mo. 495, l. c. 504-505, 196 S. W. 1121.]

IV. The defendant offered and the court refused an instruction involving assumption of the risk, which declared, among other things, that if plaintiff knew of the existence of the wire in question, and saw, appreciated and realized its position, then he could not recover. The instruction was tantamount to a

directed verdict. We think the court properly refused the instruction, because it did not require the jury to find that plaintiff knew or ought to have known that the wire endangered his safety, or that the danger was so obvious that an ordinarily prudent man would have appreciated it. [Gila Valley Ry. Co. v. Hall, 232 U. S. 94; Ches. & Ohio Ry. Co. v. De Atley, 241 U. S. 310.] That plaintiff knew of the existence of the wire, and saw, appreciated and realized its position is conceded, but, under the facts and circumstances herein, he is not to be charged as a matter of law with knowledge and appreciation that it endangered his safety. As the instruction did not require that finding, it was properly refused.

V. Defendant complains of the refusal of the court to give an instruction offered by it. This instruction was predicated also on assumption of risk. It reads:

"The court instructs the jury that the defense called assumption of risk, interposed by the defendant in this case, is a legal defense under the law as concerned with this case. In this connection the court instructs you that the defense assumption of risk means that if there exists any danger, risk or hazard which is ordinarily incident to the work in which the plaintiff is engaged, plaintiff assumed such ordinary risk, danger and hazard and cannot recover in case he is injured thereby.

"The law further is to the effect that even though the risk, danger or hazard is not ordinarily incident to the work which plaintiff was doing, still, if it appear from the evidence that any situation creating risk, danger or hazard is open and obvious, and is known and appreciated by the plaintiff, then even in that event plaintiff is not entitled to recover and your verdict must be in favor of the defendant."

The instruction was not predicated on the facts. It was merely an abstract statement of the law. It also authorized the jury to consider *"any situation* creating a risk." It thus broadened the issues and required the jury to find for defendant on *any situation* relating to his duties that created the risk, notwithstanding that such risk, danger or hazard may not have had causal connection with plaintiff's injuries.

VI. In its assignment of errors, defendant charges that the court erred in refusing to give its withdrawal instructions lettered C, D, E and F. The purpose of these instructions was to withdraw from the consideration of the jury the four assignments of negligence alleged in the petition.

While defendant in its assignments of error complains of the action of the court in refusing the instructions, it does not further mention

them, either in its points and authorities or in its argument. These assignments of error are not tenable for three reasons. First, that by failing to further notice the assignments, it will be held to have abandoned them. Second, that the giving of all of the instructions would not only have been tantamount to a directed verdict for defendant, but the giving of any of them would have affected the assignments of negligence which were properly submissible to the jury. [Clift v. Railroad, 320 Mo. 791, l. c. 802, 9 S. W. (2d) 972.] Third, that by submitting the cause on certain assignments of negligence, plaintiff abandoned all other assignments of negligence and they dropped out of the case. The refusal to give the withdrawal instructions could not be said to be error. [Reith v. Tober, 320 Mo. 725, l. c. 737-8, 8 S. W. (2d) 607.]

It follows that the judgment must be affirmed. It is so ordered. *Henwood* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.