ROBERT HENDERSON vs. ST. PAUL & DULUTH RAILROAD Co.

(Argued Nov. 15, 1892. Decided March 18, 1898.)

**The Question of Negligence of the Parties was for the Jury.**

The plaintiff was injured while attempting to pass between railway
cars in a train standing on a street crossing. *Held*, upon the evidence
in the case, that the jury was justified in finding that the defendant's
engineer in charge of the train saw the plaintiff, and negligently backed
up the train while he was between the cars, and without giving him suf-
ficient time to pass through safely. *Held*, also, in view of the circum-
stances referred to in the opinion, the question of the plaintiff's contrib-
utory negligence was for the jury.

**New Trial for Inadequate Damages.**

A verdict in the plaintiff's favor, clearly inadequate, under the evi-
dence, as respects the amount of damages, may be set aside on that
ground.

Appeal by plaintiff, Robert Henderson, an infant, by John Hen-
derson, his guardian *ad litem*, from an order of the District Court of
Ramsey County, *Egan*, J., made May 14, 1892, denying his motion
for a new trial.

The plaintiff was injured October 7, 1891. He was then eleven
years and five months of age. He attempted to climb over the
bumpers between the cars of a freight train standing across the
street at White Bear Lake. The train was backed while he was in
the act, and his left foot was caught between the bumpers and seri-
ously injured. He brought suit against the defendant, the St. Paul
& Duluth Railroad Company, operating the train. The trial was
had on March 2, 1892. The plaintiff had a verdict for $250. He

was dissatisfied with the amount, and moved for a new trial for inadequate and insufficient damages, appearing to have been given under the influence of passion or prejudice.   1878 G. S. ch. 66, § 253, as amended by Laws 1891, ch. 80.   The motion was denied and he appealed.

*Butts & Jaques*, for appellant.

This case appeals to the humanity of this court.   This boy suffered a severe and permanent injury; his foot was crushed, destroying the small bones in the arch of the instep, permanently arresting expansion and development of the foot.   The great toe was so crushed as to make amputation necessary at the ball of the foot; the first and second toes were injured, and the first toe broken and permanently stiffened.   The foot will never improve, and he is permanently crippled.   All this is conceded.

Pensions are placed upon the basis of assistance, not as full compensation.   The pay allowed by the government for total disability of either foot is, for a private, $18; and for a lieutenant, $40.50 per month.   The child's expectancy of life is forty-eight and one-half years, and under these rules his pension as a private during life would be at least $10,368; as a lieutenant, $23,338; and the present worth of his pension as a private would be $3,100, and as a lieutenant $7,000.   If the child is entitled to recover at all, $7,000 is the least sum which an honest jury, unprejudiced and unbiased, should have given him.

It is manifest upon inspection of the case, that the court's action throughout the trial was prejudicial to plaintiff.   While he ultimately permitted plaintiff to show the customs and practice of pedestrians at that crossing, and the record in that respect at last was cured, still page after page of the record shows that the comments and actions of the court could not help but convey the impression to the jury that this evidence was immaterial or of no weight, and although it was finally admitted, the jury evidently did not consider it.

The jury found all the issues adversely to defendant.   The only question is, should the case have been submitted to the jury at all?   The testimony of the boy, that the engineer saw him go between the

cars and then started up in the manner testified to, settles this question. If so, the inadequacy of the verdict is too apparent for argument. *Strutzel* v. *St. Paul City Ry. Co.*, 47 Minn. 543; *White* v. *Wabash Western Ry. Co.*, 34 Mo. App. 57; *Wright* v. *Detroit, G. H. & M. Ry. Co.*, 77 Mich. 123; *Kenyon* v. *New York Cent. & H. R. R. Co.*, 5 Hun, 479.

*Lusk, Bunn & Hadley,* for respondent.

It is not often that a jury are influenced by passion or prejudice against a bright little boy twelve years old, with an injured foot, and in favor of the railway corporation which did the injury. The claim is improbable, if not preposterous on its face. For this court to say as a matter of law that the damages are so far inadequate that the jury must have fixed them under the influence of passion or prejudice, would be a ruling almost, if not quite, without precedent.

This is a case in which the verdict ought to have been directed for the defendant. The boy testified that he had crawled between the cars in the same manner a good many times before the accident; that he did it because other boys did it; that his father and mother and other people had told him it was dangerous, and he must not do it; that he knew the train had just been moving backwards and forwards and that the engine was hitched to the end of it; that if any of the trainmen saw him, he would wait until they were not looking, before he would run in between the cars; that he knew it was dangerous and was afraid of getting hurt; that he had been told that other little boys had been hurt around the cars; that he understood the bumpers were the things that came together when the train moved; and had known this for two or three years; that he knew if he put his foot down on the link, and the train backed, it would crush his foot; and that he had known this for two years. This makes a clear case of contributory negligence as a matter of law, a much clearer case than *Twist* v. *Winona & St. Peter R. Co.*, 39 Minn. 164. The only ground upon which the case could be sent to the jury, as against this showing of contributory negligence, would be that the case was one which warranted the jury in finding a wanton injury inflicted on the boy by the company's engineer. The rule on this

subject is stated by this court in *Studley* v. *St. Paul & Duluth R. Co.,* 48 Minn. 249.

VANDERBURGH, J. The defendant's railway runs through the village of White Bear, and, among others, crosses First street, which is a public and popular thoroughfare, over which citizens in great numbers have been accustomed to pass each day to and from their residences or places of business. This crossing is near the yard of the defendant in that village, and is much occupied in switching cars and making up trains, so that the street is frequently blocked so long as to subject persons desiring to cross to tedious delays unless they shall take the risk of crawling under or climbing over or between the cars, or should travel several blocks out of their way, to cross the track elsewhere. This custom or practice of passing over or between cars had been so general as to have become well known to the engineer and fireman in charge of the train upon which the plaintiff was injured. On the morning of the accident, the plaintiff, a boy eleven years of age, was sent by his parents on an errand, which obliged him to cross the track of defendant on the street in question. He found it obstructed by a freight train. The men in charge of it had been engaged in switching, and, when it stopped on the crossing, plaintiff observed the engineer on the engine looking back towards him, and thereupon he undertook to cross by climbing over the bumpers between two freight cars, and jumping off upon the other side. The evidence shows that he had frequently seen others pass over in that way safely, and he had done so himself in sight of the same engineer; yet he admits that he had been warned by his parents and others, and knew that it was dangerous to cross in that way. His testimony, however, tends to show that he relied upon the fact that the engineer saw him in the act of crossing, and on that account did not expect the train would be moved while he was between the cars. It also shows that he was in full view of the engineer when he attempted to climb upon the car, and that there were no intervening obstructions to prevent him from seeing the plaintiff, and that, while the latter was in the act of passing between the cars, and was placing one of his feet upon the

connecting link between the bumpers, the train was suddenly backed up, and his foot crushed between them.

Upon the evidence in the case we are of the opinion that the jury might find that the engineer saw the plaintiff, and knew that he was trying to pass over between the cars, and that he negligently backed the train down without giving the plaintiff sufficient time to get through safely, particularly in view of the fact that he was in the habit of allowing persons to cross in that way; and, if the jury so found the facts in the case, it was negligence on the part of the engineer which would subject the defendant to an action for damages, unless the plaintiff's own negligence should preclude a recovery in the case. But we think, in view of all the circumstances above enumerated, and taking into consideration the plaintiff's age, that the court was right in submitting the question of plaintiff's contributory negligence also to the jury.

Assuming, then, that these questions were for the jury, we are next to consider the further question raised by the appellant in respect to the alleged inadequacy of the verdict.

The general power of the court to set aside a verdict for the reason that it is grossly inadequate and disproportionate to the injury suffered in a case of this kind does not appear to be questioned by the defendant's counsel. The ground on which the courts under statutes similar to our own usually base such relief is that such verdicts should be treated as not supported or justified by the evidence, and hence new trials have not unfrequently been granted on this ground. *Emmons* v. *Sheldon,* 26 Wis. 650; *Bennett* v. *Holro,* 72 Cal. 178, (13 Pac. Rep. 473;) *Benjamin* v. *Stewart,* 61 Cal. 608; *Platz* v. *Cohoes,* 8 Abb. N. C. 396.

The evidence in this case shows that the boy had placed his left foot upon the link between the bumpers, when they came together and crushed his toes and the inside of his foot. The great toe had to be amputated, and two others were badly lacerated, and one of them permanently injured. The foot was pressed out of shape, and has never fully resumed its normal condition, and probably never will. He was under surgical treatment for four or five weeks, and experienced considerable pain and suffering. The injury to the foot,

together with the loss of the great toe, causes a lameness which is likely to be permanent. The question of the negligence of the respective parties was, as we have seen, one for the jury to decide, and their verdict on that question could not be disturbed; certainly not by this court. But a verdict for plaintiff established the defendant's liability, and the jury was thereupon bound to give adequate and reasonable compensatory damages.

Without intimating at all what the damages should be, the court is of the opinion that the amount allowed is inadequate and disproportionate to the nature of the injury, and that the verdict ought not to stand, and the case should therefore be submitted to another jury.

The jury may have had so much doubt upon the first question that they were induced to compromise on the second.

·Order· reversed.

(Opinion published 55 N. W. Rep. 53.)