ST. LOUIS SOUTHWESTERN RAILWAY CO. v. CHRISTIAN.

Opinion delivered April 28, 1924.

1. RAILROADS—OBSTRUCTING CROSSING—DUTY TO TRAVELERS.—When a railroad company occupies a crossing for a time beyond the lawful period, it is under duty to travelers who attempt to cross not to start the train without reasonable warning.

2. RAILROADS—OBSTRUCTING CROSSING.—A pathway which crossed a ditch by a foot-log, and continued across defendant's track, permissively used by the public, is not a crossing or an alley within Crawford & Moses' Dig., § 8560, prohibiting the blocking of any highway, street or alley crossing by trains for more than 10 minutes, so that defendant owed no duty, and was not liable for injuries to a boy who was run over while attempting either to crawl under the train or to hang on to the train for a ride.

Appeal from Columbia Circuit Court; L. S. Britt, Judge; reversed.

John R. Turney, Gaughan & Sifford and Elbert Godwin, for appellant.

1. An infant injured by coming in contact with a freight-car near the middle of a train rightfully occupying the track, cannot recover from the railroad company, where the undisputed evidence shows that the perilous position was not discovered by the train crew in time to have averted the injury, whether the place at which he came in contact with the train was on the private right-

of-way of the railroad, a footpath on the right-of-way customarily used by the public, or a public highway. 117 Ark. 483; 101 Ark. 532; 57 Ark. 461; 90 Ark. 281; 95 Ark. 190; 93 Ark. 24; 25 Ky. Law Rep. 1623, 78 S. W. 439; 2 Thompson's Com. on Law of Negligence, § 1674.

2. A meandering footpath across a railroad right-of-way which has been used by the public for many years is not a "public highway, street, alley or crossing" within the meaning of Crawford & Moses' Digest, § 8560, making it unlawful for a train to remain standing on such a public crossing longer than ten minutes. 89 Ark. 103; 103 Ark. 226; 96 Ark. 638; 52 Tex. Civ. App. 575, 113 S. W. 611; 104 Mo. 211, 16 W. 11; 106 Ark. 390.

3. The evidence conclusively repels the inference that appellant's train had remained standing on the pathway for more than ten minutes prior to appellee's injury.

4. If it be assumed that the train unlawfully blocked the pathway, in violation of the statute, for more than ten minutes, still its alleged negligence in failing to give warning signals could not have been the proximate cause of the injury, since the appellee, because of his age, could not have appreciated the signals if they had been given. 63 Ark. 177; 84 Ark. 270; 106 Ark. 390; 130 Ark. 583; 132 Ark. 431; 63 Ark. 177; 56 Ark. 387.

*A. D. Pope, M. P. Huddleston* and *R. P. Taylor,* for appellee.

1. On the theory of liability on the part of the railroad company under Crawford & Moses' Digest, § 8560, counsel draw a distinction between that section and § 8568a, on which appellant relies, and say that the crossing at which the injury occurred comes within the definition of an alley, such as is contemplated by § 8560. Permissive use is not restrictive of public right. 157 Ark. 449, 452; 78 Ark. 251, 260; 31 Ky. L. Rep. 825, 104 S. W. 258, 13 L. R. A. (N. S.) 1066. The crossing was maintained primarily, if not solely, for public use. Appellee had the right, because of the unlawful obstruction of Junction Street, to attempt crossing at the point of

injury. 50 Mo. 461, 11 Am. Rep. 420, 12 Am. Neg. Cases, 198. And he had this right, and for the same reason, to attempt crossing at any point in the train, whether at a customary crossing point or elsewhere. 168 Mo. App. 160, 153 S. W. 66; 58 Kan. 424, 49 Pac. 599, 3 Am. Neg. Rep. 26; 84 G. A. 698, 11 S. E. 455; 16 A. L. R. 1054, note; 62 Ark. 156; 64 Ark. 364. Plaintiff is not chargeable with contributory negligence. He may rely on the negligent obstruction as causing his injury. 180 S. W. (Ky.) 792; 22 R. C. L. 994. If the statute be viewed as penal, the result is not altered. 93 Ark. 42, 45; 95 Ark. 218; 45 Ark. 387, 391; 132 Ark. 1, 7. But the statute is not penal. It has both a penal and a remedial aspect, and the latter controls in a civil suit to recover damages. 24 Atl. 831; 176 Ill. 489, 42 L. R. A. 804; 123 Ark. 226, 230; 93 Ark. 42, 45. The jury's finding establishes negligence *per se* on the part of the defendant, and that negligence was the proximate cause of the injury. 146 Ark. 448, 455; 180 S. W. 792; 84 Ga. 698, 11 S. E. 455. The proximate cause in this case relates back to the obstruction. This as a matter of law, assuming the correctness of appellant's theory that the failure to warn could not have been the proximate cause of the injury because of the plaintiff's tender years and consequent inability to appreciate the warning. 146 Ark. 448; 99 Miss. 519, 55 So. 287.

2. The statutory presumption makes the railroad company *prima facie* liable for damages caused by a running train. C. & M. Digest, § 8562. This presumption places on the defendant the burden of disproving every element of negligence, whether specifically alleged or not, which may reasonably have caused the injury. And such presumption uniformly favors children of tender years. 57 Ark. 136; 80 Ark. 19, 21; 180 S. W. 490; 83 Ark. 217, 221; 59 Ark. 140; 179 U. S. 658; 89 Ark. 574, 577; 23 A. L. R. 1214, note; 49 Ark. 257, 264; 62 Ark. 245, 253; 52 Ark. 162. The presumption favors a bare licensee, if he be a minor of tender years.

McCULLOCH, C. J.  Howard Christian, a small boy about five years of age, was run over by a freight train of appellant's being operated in the city of Paragould. The boy's leg was mashed off, and he suffered pain. This is an action instituted by the guardian of the boy against the railway company to recover damages. There was a verdict against the company, awarding damages to appellee, and an appeal has been prosecuted.

There are many assignments of error, among which is one that, according to the undisputed evidence, there is no liability, and this is the only one which we find it necessary to discuss.

Appellant's line of railroad runs through the city of Paragould slightly northeast and southwest, crossing the streets and alleys obliquely. Some of the streets and alleys intersected by the railroad are open and some are closed. Vine Street, near which the injury to appellee occurred, runs east and west, and is closed. The plats in evidence show that the street is laid out on both sides of the railroad, but there is no crossing there. Junction Street, the next one on the north of Vine, is open, and also Park Street, two blocks south of Vine, is open. Second Street, which runs north and south on the west side of the railroad crossing, intersects Vine Street at the edge of the railroad right-of-way. East of the railroad right-of-way Vine Street is also obstructed by a manufacturing plant, shown on the plat as being nearly across the street adjoining the right-of-way. Just north of the north line of Vine Street there is a trestle spanning a deep ditch. There are two ditches parallel with the main track, north and south and on the west side of the track, which drain into the large ditch spanned by the trestle. Across the ditch north of the trestle there is a wooden stringer, ten by fifteen inches in size, used as a footlog, or walkway. The footlog was placed there by the railroad company, and the first one placed there was replaced by a larger one. At the end of the footlog there is a path which leads across the main line of appellant's track, and also across the Missouri Pacific track. The footlog and the

path which connects have, according to the evidence, been used by the public for many years, without protest or objection. Appellee was run over at a point on the track very near where this pathway crosses the track. He was run over by a freight train containing fifty-eight cars. The train came into the city from the south, and slowed down preparatory to stopping at the water-column for water. The train was 2,500 feet in length, and reached south from the water-column to a point considerably south of the place where appellee was struck at the footpath. In other words, appellee was struck by one of the cars in the train, about the fifteenth from the engine. According to the evidence, the train moved into the city at a slow rate of speed, and the engine stopped at the tank. In coming to a stop the engineer failed to accurately spot the engine so as to stop it at the water-column, and it was necessary to back up a little.

There is no witness who saw the boy when he was run over by the train, and it is to some extent a matter of speculation as to how it occurred, but it is inferable that the boy was either attempting to crawl under the train and thus pass over the track, or that he was hanging on to the lower rung of the ladder, attempting to ride the train. The only witnesses who saw the boy prior to the injury were the engineer and fireman, who testified that, as they passed up, they saw three boys on the side of the ditch near the footlog, apparently at play, and the boys waved to them, and they responded to the greeting. A witness, who was in the kitchen-car of a work-train standing on an adjoining sidetrack, testified that she heard noises which she found to be the scream of a child, and that, when she looked in that direction, she saw appellee attempting to roll out from under the edge of the train. She testified that she saw two other boys running away from the scene, but that appellee was unable to walk, for the reason that his leg was cut off. This witness testified that the place where she discovered the boy was at the fifteenth car from the engine.

It is undisputed that the train of cars was not cut in two, and that appellee was not struck by the front or rear of the train, but came in contact, as before stated, with one of the cars in the train. It is not contended that the lookout statute requiring signals is involved in the controversy. There is a controversy between counsel as to whether or not the train had come to a full stop before the injury occurred and as to the length of time the train remained standing before the injury occurred. We deem it unnecessary, in view of the conclusion we have reached, to determine those questions.

Counsel for appellee undertake to sustain the recovery solely on the ground that appellee, when injured, was attempting to cross the track at the pathway crossing referred to above; that, in the operation of the train, there was a violation of the statutory inhibition with reference to blocking crossings; that appellee, being a child of tender years, was incapable of guilt of contributory negligence, and that appellant was therefore liable for the injury. In other words, the contention of counsel for appellee is that the pathway referred to was a kind of crossing referred to in the statute against blocking by railroad trains, that appellee had the right to attempt to cross, and that appellant is liable on account of violation of the statute, which reads as follows:

"If any corporation, company, person or persons owning or operating railroad trains in this State for the purpose of carrying freight, suffers or permits the same to remain standing across any public highway, street, alley, or farm crossing, or, when it becomes necessary to stop such trains across any public highway, street, alley or farm crossing for more than ten minutes, and fails to leave a space of sixty feet across such public highway, street, alley or farm crossing, shall be fined in any sum not less than five dollars nor more than twenty-five dollars." Crawford & Moses' Digest; § 8560.

If the pathway crossing mentioned above falls within the definition of the statute, and was blocked by the train for a longer period than ten minutes, then appellee or any

other traveler seeking to cross had the right to adopt some other means of effecting a crossing, and the company would be liable for any injury resulting in the attempt to cross, in the absence of contributory negligence, and appellee, being of tender years, would not be open to the charge of contributory negligence in attempting to cross the track. The rule sustained by authorities seems to be that, when a railroad company occupies a crossing for a time beyond the lawful period, it is under duty to travelers who attempt to cross not to start the train without reasonable warning. *Trent* v. *Norfolk & W. R. Co.,* 167 Ky. 319; 2 Thompson on Negligence, § 1674; 22 R. C. L. 994. If, however, the pathway in question was not such a crossing as comes within the definition of the statute, then there was no violation of any statutory or other duty, and appellant is not liable.

Our conclusion is that the pathway in question does not come within the statutory inhibition, for it is neither a public highway nor a street or alley within the meaning of the statute. Counsel for appellee contend that it is an alley within the meaning of the statute, and they rely upon the dictionary definition of the word "alley" as "a narrow passage; * * * a narrow passage or way in a city as distinct from a public street." We are of the opinion that the word "alley," in the statute is used in the popular sense, and that it was intended to mean a narrow street in a city or town as distinguished from a street upon which buildings face. In fact, some of the dictionary definitions of the word "alley" are sufficient to exclude the application to the pathway in question, and if the dictionary meaning is to be accepted, there are many other definitions therein given which would make them applicable to any kind of private way. The dictionaries define a street broadly as "a way or course" (Webster), and if this definition is accepted as being applicable, it would include an alley, and it would therefore be unnecessary to use the word "alley" at all.

The evidence in the case shows that this pathway was along a footlog over the ditch and then a mere walk-

way over the track. The right to use it was exercised permissively, and no public way was acquired by prescription. It was not therefore such a crossing as was contemplated by the statute which prohibits the blocking of an alley. If the *locus in quo* was the unopened portion of a street which ran up to the right-of-way on each side, it would not affect the question of the application of the statute. There is no contention that the street had ever been open, and, if an unopened street was there, it would not make this pathway a public alley within the meaning of the statute. But the plat in evidence shows unmistakably that the pathway was not along the unopened street—it was north of the street line.

Something is said in the brief about the question of liability on account of blocking Junction Street on the north and Park Street on the south, but there is no evidence in the case tending to show that the boy was traveling either of those streets or sought to cross at or near either crossing, and there is no ground upon which liability could rest.

Having reached the conclusion that there was no violation of the statutory duty in blocking the pathway in question, it is unnecessary to determine whether or not the evidence is sufficient to show that it was blocked for a longer period than the time prescribed in the statute. There being no other grounds upon which liability could be based, and the testimony being undisputed as to the character of the crossing, nothing would be accomplished by remanding the cause for a new trial, so the judgment is reversed, and judgment will be entered here in favor of appellant. It is so ordered.

Hart, J., (dissenting). Judge Humphreys and myself do not agree to the law and facts as found by the majority opinion. In the majority opinion it is said that the evidence showed that the right to use the crossing at Vine Street was exercised permissively, and no public way was acquired by prescription. On this point we quote from the testimony of Wiley George, as abstracted by counsel for appellant, the following:

"The bridge stringer across the ditch south of the depot has been there seven or eight years; ever since I lived in Paragould. The crossing is not restricted to any one class, but is used as a public crossing. The Cotton Belt right-of-way and track are used by the public generally as a pathway in going up north to town."

On this point E. O. Vickroy says: "The bridge stringer across the ditch north of trestle No. 247, opposite Vine Street, or nearly so, has been used by the public in crossing the ditch ever since I have been living in that town, better than twelve years."

Vester Grooms said: "This stringer has been used as a footbridge ever since I can remember. All the boys who worked at the Pekin stave and heading shop, and who lived on the west side of the track, used the crossing. I never knew of any restriction on the use of the crossing."

Frank Christian said: "Some one is traveling at all times the pathway that leads up and down the right-of-way. The log crossing is used as much as the public crossings at Junction and Park streets."

Girvies French said: "The foot-bridge and pathway had been used by the public generally ever since I have been in town, ten or twelve years. I never heard any whistle or signal by the train from the time it pulled into town until it gave two long blasts when it started to go out."

I. N. Jackson said: "I am an employee of the Missouri Pacific, and have been for more than twelve years. The crossing of the Cotton Belt and Iron Mountain in the city of Paragould, at what is known as Vine Street, has been used generally by the public ever since I have been here. The public generally uses the roadbed of the Cotton Belt traveling north and south, up and down the tracks past that crossing."

Several other witnesses testified to substantially the same state of facts; and there is no other and different evidence on this point.

It is well settled in this State that a way by prescription may be established by evidence of user by the public, adverse and continuous, for a period of seven years or more. From which use arises a presumption of a reservation or grant, and an acceptance thereof, or that it had been laid out by the proper authorities, of which no record exists.

It was a question for the jury to determine, upon all the evidence in the case, including that quoted above, whether the use by the public of the crossing was adverse and under a claim of right, or whether it was permissive and allowed by the railroad company.

In the majority opinion it is also stated that the plat shows that, east of the railroad right-of-way, Vine Street is obstructed by a manufacturing plant, which is nearly across the street adjoining the right-of-way. It is true that there is a manufacturing plant situated in the part of Vine Street east of the railroad, but it is not shown how much of the plant is in the street and how much on the right-of-way. The plat does show that Vine Street runs east and west. It is a public street running to the right-of-way of the railroad on the west side thereof. East of the right-of-way, Vine Street continues as a part of the platted streets of the town. According to the plat, Vine Street is one of the public streets of the city, and runs to the railroad right-of-way on each side thereof.

We think, when the plaintiff proved an adverse use, general, uninterrupted, and continued for more than seven years, that the jury might have found that that part of the right-of-way opposite Vine Street had become a public highway. In other words, it is admitted that Vine Street is a public street of the city, and that it extends to the right-of-way of the railroad both on the east and west side thereof. If the jury should find that the public acquired a right to cross the railroad right-of-way between the points on the east and west side thereof, where Vine Street is platted as a street of the city, the crossing necessarily partakes of the character of the

crossing of which it becomes a part. To illustrate: if Vine Street had been a private way, the crossing acquired by the public would be a part of that private way and would be a private crossing, no matter how many people crossed over it, or whether they crossed on foot or in vehicles.

On the other hand, Vine Street being a public street of the city, the crossing acquired by adverse user by the public became a part of Vine Street and thereby a part of a public street of the city. It is not necessary that a public crossing should be put in condition that vehicles might drive over it in order to constitute it a part of a public street. Of course this would be a fact to be considered, but it is not conclusive.

Hence we think that it was a question for the jury to say whether, under all the evidence, there was a public street at the place where the accident occurred, within the meaning of § 8560 of Crawford & Moses' Digest.

Some of the witnesses for the plaintiff testified that this street was obstructed by the train on the day in question for more than ten minutes.

The result of our views is that we respectfully dissent from the majority opinion.