Charles DODWELL, a Minor, by His Mother
and Next Friend, Virginia Dodwell
Williams, Respondent,

v.

MISSOURI PACIFIC RAILROAD
COMPANY, Appellant.

No. 50390.

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied ·
Dec. 14, 1964.

Norman R. Jones, Kansas City, Griffin Smith, Little Rock, Ark., Donald E. Raymond, Kansas City, for respondent.

Mark M. Hennelly, Charles P. Lippert, St. Louis, for appellant.

HOUSER, Commissioner.

Charles Dodwell, a minor, filed suit pro ami against Missouri Pacific Railroad Company for personal injuries inflicted as a result of the alleged negligence of the railroad employees in blocking a public street crossing in North Little Rock, Arkansas, with its train for an excessive period of time under the city ordinance, and when plaintiff attempted to cross over the cars of said train negligently moving the train without warning plaintiff in any manner of the impending movement, as a result of which plaintiff's leg was severed below the knee and he sustained other severe injuries. A trial jury awarded plaintiff $50,000. The railroad has appealed from the judgment entered upon the verdict.

From the evidence favorable to the prevailing party the jury could have found these facts: On June 8, 1960 plaintiff was 13 years old. His next birthday was July 28. He had just completed the eighth grade and was intending to go on to high school the following year. He had successfully completed all of his grades, was an "average" student, and had made A's, B's and C's in his studies. He took part in sports, baseball, basketball, skating and swimming. He lived with his mother near the crossing where 10th Street crosses the Missouri Pacific tracks. Tenth Street leads from a residential area across two railroad tracks to a stairway extending from the Main

Street viaduct. On the evening of June 8 plaintiff went swimming with other boys at the North Little Rock Boys' Club. After the pool closed for the night plaintiff returned with another boy and swam for another 5 or 10 minutes, in violation of the rules. Plaintiff started home alone, taking a route over the Main Street viaduct to a point halfway across the viaduct where a stairway leads down from the viaduct to 10th Street below. Railroad tracks upon which switching operations are conducted are located beneath the viaduct. It takes from 5 to 8 minutes to walk from the beginning of the viaduct to the stairway and another 2 minutes to go down the stairway and reach the crossing. When plaintiff had traversed one fourth of the route over the viaduct he looked down and saw a stationary train sitting on the 10th Street crossing. Plaintiff descended the stairway and stood at the crossing, waiting to see if the train was going to move. He waited for a time variously estimated at from 2 to 6 minutes. It was dark, the time close to 10 p. m. He looked both to the north and to the south, but was unable to see either end of the train because of curves in the tracks. The train had been stopped at least 11 minutes and possibly as much as 15 minutes, to his knowledge. The train did not move, so he decided to cross over the train and go home. Before doing so he did not hear a bell sounded, or a whistle, or any type of warning. He walked to his left to the nearest coupling and, the train still not moving, started to crawl through the train, climbed up on the coupling, and "all of a sudden it [the coupling] popped," the train moved suddenly and plaintiff fell off, sustaining the injuries which resulted in the necessity of amputation of his left leg 4 inches below the knee. During the year plaintiff lived in the area of the 10th Street crossing prior to the accident plaintiff observed people and vehicles using this crossing, and saw trains blocking the crossing sometimes two or three times a day, for periods varying from 5 minutes to 2 hours. Plaintiff observed that people "just go on through" when the crossing is blocked by trains; people of all ages, from 5 years on up. He saw adults climb over the coupler and crawl under the wheels, within a distance of 20 feet on either side of the crossing. Other witnesses who lived nearby had noticed both children and adults crossing over and climbing over and under standing trains, to avoid walking several blocks to get around trains blocking the crossing. Children used the crossing daily going to school and to the Boys' Club. This situation obtained as far back as 1951 or 1952. He never saw a flagman there warning people of train movements and seldom heard a whistle sounded when a train moved off the crossing. No railroad crossing sign was posted there. Plaintiff knew of an alternate route from pool to home available to him, over the viaduct to the 7th Street exit, by which he could have avoided crossing the tracks, but he never used the other route; the route he took was shorter. In taking the route he followed that night he knew that he was walking to a blocked crossing, and that he would either have to wait for the train to move or go through the train. He knew that trains meant danger and that if he went through a train he might get hurt; that it was dangerous to crawl through a train. His mother had told him to stay off the trains. When he saw this train he knew it might be stopped there for a long time, possibly as long as an hour, and although he knew it was dangerous if he went through it he "didn't believe the train would move from there."

The railroad's first point is that the court erred in not directing a verdict in its favor because plaintiff was guilty of contributory negligence as a matter of law at least equal to if not in excess of any negligence on the part of the railroad. (Under the comparative negligence statute, Arkansas Statutes, 1947, § 73–1004, a plaintiff may recover despite his contributory negligence, Tepel v. Thompson, 359 Mo. 1, 220 S.W.2d 23, 26 [7, 8], where his negligence is "of less degree" than that of the railroad employees.)

The accident occurred in the State of Arkansas and the laws of that state must be applied. Howie v. St. Louis S. W. Ry. Co., 360 Mo. 771, 230 S.W.2d 703. In the absence of judicial precedents in Arkansas of which we may take cognizance we must apply our own precedents. Stevens v. Missouri Pac. R. Co., Mo.Sup., 355 S.W.2d 122, 128.

Imprimis, the railroad disclaims any and all liability to plaintiff on the ground that he was a trespasser, and invokes the general rule that a railroad company owes trespassers no positive duty of care and only the negative duty not to wilfully or wantonly injure them, or the duty to exercise ordinary care not to injure them after discovering their danger and inability to escape, citing the Arkansas cases of Adams v. St. Louis, I. M. & S. Ry. Co., 83 Ark. 300, 103 S.W. 725; Catlett v. St. Louis, I. M. & S. Ry. Co., 57 Ark. 461, 21 S.W. 1062; Cato v. St. Louis Southwestern Ry. Co., 190 Ark. 231, 79 S.W.2d 62; Missouri Pac. R. Co. v. Merrell, 200 Ark. 1061, 143 S.W.2d 51; Allnutt v. Missouri Pac. R. Co., 8 F.2d 604 (8th Cir. 1925), and the Missouri case of Thrower v. Henwood, 351 Mo. 663, 173 S.W.2d 861. Whether plaintiff was a trespasser when he attempted to climb over the train depends upon whether he had a right to use the public crossing at that time. A city ordinance made it unlawful for any railway company to block or obstruct any of the street crossings within the city limits for a longer period than five minutes at one time by either cars or locomotives. Under this ordinance the railroad had a right to occupy, block and obstruct the 10th Street crossing with its locomotive and cars for a period of five minutes. Its right to the occupancy of the crossing was temporarily exclusive and paramount to the traveling public's right of free passage at the crossing, and during that period the public's (and therefore plaintiff's) right of free passage was temporarily suspended. Any person boarding the cars of the train during that period

without a privilege to do so created by the railroad's consent or otherwise would be a trespasser, under the cases of Central of Georgia Ry. Co. v. Chambers, 183 Ala. 155, 62 So. 724; Southern Ry. Co. v. Clark, 32 Ky.Law Rep. 69, 105 S.W. 384, 13 L.R.A., N.S., 1071; Shea v. Chicago, M. St. P. and P. R. Co., 243 Wis. 253, 10 N.W.2d 135. Our conclusion that this is the law of Arkansas is supported by Cato v. St. Louis Southwestern Ry. Co., 190 Ark. 231, 79 S.W.2d 62, in which recovery was denied a widow and the heirs on the theory that their decedent was a trespasser in crawling under or between the cars of a live freight train just after it arrived in town and stopped, obstructing the principal thoroughfare, its engine still attached to the train, where deceased knew that the train would not be permitted to block the street except for a few minutes. During the period of the railroad's paramount (and exclusive) right to the use of the crossing the only duty of the railroad to a trespasser would be that of due care after discovery of such person in a dangerous position, and not to injure him wilfully or wantonly. Cato v. St. Louis Southwestern Ry. Co., supra; Shea v. Chicago, M. St. P. & P. R. Co., supra. Different considerations apply where a train has obstructed a crossing for an unlawful period. Travelers seeking to use the public street are not then obliged to wait until the train is removed before continuing their business, Brown v. The Hannibal & St. Joseph R. R. Co., 50 Mo. 461, but have "the right to adopt some other means of effecting a crossing, and the company would be liable for any injury resulting in the attempt to cross, in the absence of contributory negligence * * *." St. Louis Southwestern Ry. Co. v. Christian, 164 Ark. 65, 261 S.W. 297, 262 S.W. 29. In St. Louis, I. M. & S. Ry. Co. v. Wells, 102 Ark. 257, 143 S.W. 1069, the following from 2 Thompson on Negligence, § 1674 was quoted with approval: "But after the train has obstructed the crossing beyond the length of time prescribed by statute or ordinance * * * then the railway company

is guilty of an unlawful obstruction of the highway * * * [and] [t]he right of passage on the part of the public is restored." In view of these pronouncements and of the general tenor of its opinions, we believe that the Supreme Court of Arkansas, confronted with this case in which the railroad had blocked and obstructed the crossing for more than five minutes, thus hindering travel thereon, would hold that the railroad train was in a place where it had no right to be and that the continued obstruction of the crossing was unlawful; that plaintiff was rightfully upon the crossing; that his attempt to pass the obstruction by climbing up on the cars did not classify him as a trespasser, Lake Erie & W. R. Co. v. Mackey, 53 Ohio St. 370, 41 N.E. 980; Texas & N. O. R. Co. v. Owens, Tex.Civ. App., 54 S.W.2d 848; Gesas v. Oregon Short Line R. Co., 33 Utah 156, 93 P. 274, 279; Littlejohn v. Richmond & D. R. Co., 49 S.C. 12, 26 S.E. 967; Mayer v. Chicago & A. R. R. Co., 63 Ill.App. 309; Krenzer v. Pittsburgh, C., C. & St. L. Ry. Co., 151 Ind. 587, 43 N.E. 649, 52 N.E. 220; Baltimore & O. R. Co. v. State, 141 Md. 520, 119 A. 244, and that he could recover for injuries negligently inflicted upon him by the railroad while crossing over the train, provided that in so doing he exercised ordinary care for his own safety under the circumstances. St. Louis Southwestern Ry. Co. v. Christian, supra; St. Louis, I. M. & S. Ry. Co. v. Wells, supra; Brown v. The Hannibal & St. Joseph R. R. Co., supra; Trent v. Norfolk & W. Ry. Co., 167 Ky. 319, 180 S.W. 792 [6]; 74 C.J.S. Railroads § 724 b, fns. 72, 73, p. 1335; 44 Am.Jur. Railroads § 504, p. 744; Thompson's Commentaries on the Law of Negligence, Vol. 2, § 1674. The train having obstructed the 10th Street crossing for at least eleven minutes, under plaintiff's testimony, we decline to declare as a matter of law that plaintiff was a trespasser.

■ This brings us to the railroad's principal contention under its first point— that plaintiff was guilty of contributory negligence as a matter of law. The railroad cites the Arkansas cases of Curtis v. St. Louis & S. F. R. Co., 96 Ark. 394, 131 S.W. 947, and St. Louis-S. F. Ry. Co. v. McClinton, 178 Ark. 73, 9 S.W.2d 1060, and the Missouri cases of Hudson v. Wabash, W. Ry. Co., 101 Mo. 13, 14 S.W. 15, and Corcoran v. St. Louis, I. M. & S. Ry. Co., 105 Mo. 399, 16 S.W. 411. These cases, holding *adult* persons guilty of contributory negligence as a matter of law in crossing over a standing train which the adult knows or reasonably should know has an engine attached to it or about to be attached to it and is ready to move, are of little utility in passing upon the question whether this plaintiff, 13 years and approximately 10 months of age when he was hurt, should be declared guilty of contributory negligence as a matter of law. While infancy of a minor plaintiff does not preclude the defense of contributory negligence, Sams v. Pacific Indemnity Co., 170 F.Supp. 909 (W.D.Ark.1959), the standard for judging the conduct of a minor is not the ordinary care and prudence that would be exercised by an adult but only that ordinarily exercised by one of his age, intelligence, discretion, knowledge and experience under the same or similar circumstances. Patterson v. Bell, 204 Ark. 777, 164 S.W.2d 902; Missouri Pac. R. Co. v. Cox, 187 Ark. 104, 58 S.W.2d 421; Gates v. Plummer, 173 Ark. 27, 291 S.W. 816, 817 [2]; Kansas City Southern Ry. Co. v. Teater, 124 Ark. 1, 186 S.W. 294; Garrison v. St. Louis, I. M. & S. Ry. Co., 92 Ark. 437, 123 S.W. 657; Sams v. Pacific Indemnity Co., supra. This is also the rule in Missouri. See Hosford v. Clark, Mo.App., 359 S.W.2d 424, and Wilson v. White, Mo.App., 272 S.W.2d 1, and the many Missouri cases cited therein. "No arbitrary rule can be established fixing the age at which a child, without legal capacity for other purposes, may be declared wholly capable or incapable of understanding and avoiding the dangers to be encountered upon railway tracks. It is a question of ca-

pacity in each case." Spillane v. Missouri Pac. R. Co., 111 Mo. 555, 20 S.W. 293, 1. c. 294. We restate with approval what was said in Burger v. Missouri Pac. R. Co., 112 Mo. 238, 20 S.W. 439, 1. c. 441, in a strikingly similar factual situation: "Common experience and observation teach us that due care on the part of an infant does not require the judgment and thoughtfulness that would be expected of an adult person under the same circumstances. In the conduct of a boy, we expect to find impulsiveness, indiscretion, and disregard of danger, and his capacity is measured accordingly. A boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person. Hence the rule is believed to be recognized in all the courts of the country that a child is not negligent if he exercise that degree of care which, under like circumstances, would reasonably be expected of one of his years and capacity. Whether he used such care in a particular case is a question for the jury. Beach, Contrib.Neg. § 117; Eswin v. [St. Louis, I. M. & S.] Railway Co., 96 Mo. [290] 295, 9 S.W.Rep. 577; O'Flaherty v. [Union] Railway Co., 45 Mo. 70; Plumley v. Birge, 124 Mass. 57; Meibus v. Dodge, 38 Wis. 300; [Western & A.] Railroad Co. v. Young, 81 Ga. 397, 7 S.E.Rep. 912."

We have found fifteen cases involving the question whether under varying factual situations boys, ranging in age from 6 to 17 years, were guilty of contributory negligence in crossing over or crawling under trains standing at crossings.[1] In fourteen of the fifteen cases the question of contributory negligence was submitted to the jury, and in those instances in which the point was raised it was held to be a jury question and not one for the court to decide. In only one of the fifteen cases did the court hold the boy guilty of contributory negligence as a matter of law.

■ Plaintiff was in the first year of his teens. There is nothing to indicate that he was a precocious or unusually perceptive child for his age. His mother considered that he was an average student in school. Having lived in the neighborhood of the railroad yards for a year, however, and having almost daily observed trains stopped at this crossing, plaintiff was familiar with trains, had become accustomed to their stopping for considerable lengths of time at this crossing, and had doubtless lost the fear naturally associated with first experiences with trains. Plaintiff knew that this train had been standing stationary for from 11 to 15 minutes. He had seen trains stand still at this crossing for as much as 2 hours. It was 10 p. m. and the standing train was blocking his passage on his way home for the night. Many times he had seen people of all ages climb up over or go under trains blocking that crossing. Although he had been warned not to get on the trains and although some three years after the event he testified that he knew it was dangerous, it was for the jury to determine whether

1. Cleveland, C. C. & St. L. R. Co. v. Keely, 138 Ind. 600, 37 N.E. 406; Trent v. Norfolk & W. Ry. Co., 167 Ky. 319, 180 S.W. 792; McMahon v. Northern C. Ry. Co., 39 Md. 438; Henderson v. St. Paul & D. Ry. Co., 52 Minn. 479, 55 N.W. 53; Burger v. Missouri Pac. R. Co., 112 Mo. 238, 20 S.W. 439; Thompson v. Missouri, K. & T. Ry. Co., 93 Mo. App. 548, 67 S.W. 693; Lake Erie & W. R. Co. v. Mackey, 53 Ohio St. 370, 41 N.E. 980, 29 L.R.A. 757; Phillips v. North Carolina R. R. Co., 257 N.C. 239, 125 S.E.2d 603; Rauch v. Lloyd & Hill, 31 Pa. 358; Pennsylvania R. Co. v. Kelly, 31 Pa. 372; Todd v. Philadelphia & R. Ry. Co., 201 Pa. 558, 51 A. 332; Chicago, R. I. & G. Ry. Co. v. Johnson, Tex.Civ.App., 111 S.W. 758; Brown v. Panhandle & Santa Fe Ry. Co., Tex.Civ. App., 294 S.W.2d 223; Gesas v. Oregon Short Line R. Co., 33 Utah 156, 93 P. 274, 13 L.R.A.,N.S., 1074; Carmer v. Chicago, St. P., M. & O. Ry. Co., 95 Wis. 513, 70 N.W. 560.

at the time he reasoned with respect to the danger. If he considered it at all, "the degree of danger would be as likely to attract as to repel him." Rauch v. Lloyd & Hill, (1858) 31 Pa. 358, 371. He did wait for several minutes (from 2 to 6 minutes) for the train to move off the crossing but it remained stationary, which could have been regarded as an assurance that it was not going to move. He did look both to the north and to the south, we may presume for the purpose of determining whether there was a "live" engine attached to the train or an engine approaching to connect with the train. He heard no bell, whistle or other type of warning. *He did not believe the train would move.* "He acted like a child, and he is not to be judged as a man." Rauch v. Lloyd & Hill, supra, 31 Pa., 1. c. 371. We doubt "whether most boys, grown familiar with trains of cars by daily observation, would not, in like circumstances, have acted as this boy acted. To many active and enterprising children, risks not absolutely appalling, are attractive; * * *. [T]he adjudged cases in the books show that children do frequently incur equal, or even greater, hazards. We cannot, therefore, account this boy's conduct unnatural or extravagant." Pennsylvania R. Co. v. Kelly, (1858) 31 Pa. 372, 378. Reasonable minds might differ as to the inferences to be drawn from his conduct; might find that plaintiff honestly, if mistakenly, believed that the train would not start, so that the danger from attempting to cross the train was not obvious and apparent to him, considering his intelligence, discretion, knowledge and experience; and might differ on the question whether he was guilty of negligence of more or less degree than the negligence of which the railroad employees may have been guilty.

Under the substantive law of Arkansas on the question of contributory negligence of minors; the reasoning in the foregoing cases, and the evidence favorable to plaintiff, we rule that it was for the jury and not for the court to determine the question of plaintiff's fault, and there was no error in overruling the railroad's motion for a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law at least equal to, if not in excess of, any negligence established on the part of the railroad.

Another contention made by the railroad under this point is that plaintiff is bound by the testimony of his principal witness, Donna Warner, that the train was jerking when plaintiff first climbed thereon. Mrs. Warner testified by deposition that she was in a house at 922 Poplar Street, seventy-five yards from the crossing, talking on the telephone; that she heard a train getting ready to start, making noises, jerking, "taking the slack up." Because of the noise she went to shut the front door so she could hear better. She looked out and saw that the train was not moving—not rolling, "just jerking"; "just getting ready to start." She saw plaintiff "getting on it," some 10 to 15 feet from the crossing at 9th and Poplar. The boy was "on the train." She thought he had one foot on a ladder. She closed the door, went back to the telephone and had barely sat down when she heard the boy screaming. She went to the front and saw him crawling, dragging himself, and screaming for help. The railroad contends that this testimony was uncontradicted and that plaintiff is bound by the uncontradicted testimony of his own witness; that this testimony shows that plaintiff boarded the train *after* it was "getting ready to go," while it was "jerking"—jerking but not rolling; *after* the occurrence of sufficient noise to interfere with telephone conversations some distance from the crossing, and therefore sufficient to demonstrate that plaintiff was clearly guilty of contributory negligence as a matter of law when he climbed aboard a train that he must have known in advance was either moving or

about to move. In our opinion Mrs. Warner's testimony is contradicted by plaintiff's testimony that the train was not moving; that he waited to see if it was going to move, and that when "it didn't" move he started up on it; that before he started across the train he did not hear a bell sounded, a whistle, or *any type of warning*. Any type of warning would necessarily include the jerking noises attendant on preparation to start. The railroad's contention must be disallowed under the rule that a party is not bound by the unfavorable testimony of one of his witnesses if that testimony is contradicted by that party's other evidence, Reece v. Reed, Mo.Sup., 326 S. W.2d 67, 71 [5], and that the jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part. Young v. Kansas City Southern Ry. Co., Mo.Sup., 374 S.W.2d 150, 153 [3]; Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295.

■ For its second point the railroad raises several objections to verdict-directing Instruction No. 1. We will consider those objections carried forward in the argument portion of the brief. It is said that "a binding instruction must incorporate all of the essential conditions of the case," but it is not pointed out what essential conditions of liability are missing except that in the last part of the argument it is objected that the instruction omits a requirement of a finding of knowledge of plaintiff's presence on the train, an objection we treat in the next paragraph. It is argued that the instruction was in the abstract and constituted a comment on the evidence, in that it referred to the violation of the ordinance. It is said that the violation of an ordinance is not negligence per se but only evidence of negligence and that violation of the ordinance was not a factor here because not the proximate cause of the accident; that the harm resulted from the alleged fact that a stopped train suddenly started forward and moved without warning to plaintiff. We find no error in

declaring to the jury that any train which is blocking any street crossing within the city limits of North Little Rock may not do so for longer than five minutes at one time, and in requiring the jury to find that defendant's employees blocked a public street crossing with the train and allowed it to remain in a position to block the crossing for longer than five minutes at one time, as a prerequisite to a verdict for plaintiff. This was an essential basis for the further requirement that the jury find that plaintiff climbed onto the train during the period the train remained there in excess of the allowable time limit. If there had been no such requirement it could have been argued that the instruction failed to exclude the possibility that he was a trespasser at the time. The material objected to required a finding of facts which as a matter of law took plaintiff out of the classification of trespasser and gave him the right to mount the train for the purpose of climbing over and through it, in the exercise of his right of passage along the public street at that time and place.

■ The only other assigned error which was developed in the argument is that Instruction No. 1 is erroneous for failure to require a finding that the railroad knew or should have known of plaintiff's presence on the train. While this is the rule of liability with respect to trespassers it has no bearing on this case, for plaintiff was not a trespasser, under his evidence. The rule in Arkansas, where a child is injured while attempting to cross a track upon which a train has been standing for a time beyond the lawful period, is that the railroad is "under duty to travelers who attempt to cross not to start the train without reasonable warning." This rule was laid down in a case in which there was no evidence that the trainmen had knowledge of plaintiff's presence on or about the train or in a place of danger. St. Louis Southwestern Ry. Co. v. Christian, 164 Ark. 65, 261 S.W. 297. The same rule obtains in Missouri. In Burger v. Missouri

Pac. R. Co., 112 Mo. 238, 20 S.W. 439, it was held that a submissible case was made notwithstanding "[n]one of the men in charge of the train knew that plaintiff was at the time attempting to cross over it, or that he was about it, or in any wise in danger," 20 S.W., l. c. 440. In Thompson v. Missouri, K. & T. Ry. Co., 93 Mo.App. 548, 67 S.W. 693, it was held not error to refuse an instruction which told the jury that the defendant's employees in charge of the train were under no obligation to give the plaintiff (attempting to pass between two cars of a freight train while it was blocking a public street) any warning unless they knew of his perilous condition. In 44 Am. Jur. Railroads § 504, p. 744, it is stated that "In such a case (where a railroad blocks a crossing for a longer time than the law permits), it becomes a question for the jury whether or not it is negligence for the company's servants to move the train without giving timely warning of their intention to do so, and *it is immaterial that they did not have notice that some particular person was in a position of danger.*" (Parentheses and italics supplied.) And see Stratton v. Southern Ry. Co., 190 F.2d 917 (4th Cir. 1951), 27 A.L.R.2d 363. Notice of plaintiff's presence on the train was not an element of his case, under plaintiff's theory, and its omission from the required findings of fact in the verdict-directing instruction did not constitute error. To the extent that Cherry v. St. Louis & S. F. R. Co., 163 Mo.App. 53, 145 S.W. 837 [4], militates against the principle here announced it is not to be followed.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.