Myrtle GILPIN, Plaintiff-Appellant,

v.

GERBES SUPERMARKET, INC.,
Defendant-Respondent.

No. 53901.

Supreme Court of Missouri,
En Banc.

Nov. 10, 1969.

Cullen Coil, Jefferson City, for plaintiff-
appellant; Carson, Inglish, Monaco & Coil,
Jefferson City, of counsel.

Hendren & Andrae, by John E. Burruss,
Jr., and Kelly Pool, Jefferson City, for re-
spondent.

HOLMAN, Judge.

Action for damages in which plaintiff
sought to recover $50,000 for personal in-
juries. A trial resulted in a verdict for
plaintiff in the sum of $10,000. The trial

court sustained defendant's motion to set aside the verdict and for judgment in accordance with its motion for a directed verdict, and entered judgment for defendant. That motion was based primarily upon the contentions that no negligence on defendant's part had been proved and that plaintiff was guilty of contributory negligence as a matter of law. The court also ordered that if the judgment for defendant was reversed on appeal defendant's alternative motion for a new trial was granted on the following grounds: that the verdict was against the weight of the evidence; that plaintiff was guilty of contributory negligence as a matter of law; and that the verdict was excessive.

■ We have jurisdiction of this appeal because the amount in dispute exceeds $15,000. This for the reason that plaintiff is not seeking a reinstatement of the $10,000 verdict. She concedes that, under the facts of this case, the trial court had the power to grant one new trial on the ground that the verdict is against the weight of the evidence. Therefore, her only contention on this appeal is that the trial court erred in sustaining defendant's motion to set aside plaintiff's verdict and judgment and to enter judgment for defendant. In the situation presented the ultimate relief sought by plaintiff in this court is the opportunity for another trial and hence the amount in dispute is the amount prayed for in plaintiff's petition.

This appeal was originally heard in Division One where an opinion was prepared but not adopted. A dissenting opinion was also written. The case was thereafter transferred to Court en Banc where it was again argued and submitted. Portions of the principal and dissenting opinions prepared in Division are here adopted without the use of quotation marks.

The injuries of which plaintiff complains were received on May 22, 1965, when she fell as she was walking from the Gerbes Store building to her car on the parking lot. The Gerbes Store, a large supermarket in the east part of Jefferson City, had just been open for a day or two at the time of this injury. The building faces north. The center of the building extends farther north than the ends, forming a rectangular extension. Double doors for entrance and exit are on the east and west ends of this rectangular portion. In front of this center portion was a new concrete sidewalk eight feet wide. At its north edge there was a curb of six inches, and north of this curb was another strip of concrete four feet wide of the same appearance, sometimes called a sidewalk and also referred to as a "gutter." This latter strip of concrete joined the black asphalt of the parking lot. Approximately ten feet north and a little east of the east exit door a short ramp had been constructed which cut through the curbing. This constituted a sloping surface extending from the upper sidewalk level to the lower level. It was approximately 18 inches long north and south and it curved or "flared" outward at the bottom. The ramp was about five feet wide at the upper sidewalk level. There was a similar ramp north of the west entrance and exit doors but we are concerned only with the one near the east exit. The sides or edges of the ramp were rounded off or "tapered," somewhat like a driveway which passes through a curbline. There were no corners or angles. The ramp was of concrete like the walks above and below, all of a grayish color. The architect stated, however, that the ramp itself had a rough finish, while the sidewalks had a "broomed" finish which is not as highly polished as a trowel finish. There were no colored stripes or other markings on the ramp or the curb. The purpose of the ramp was primarily to permit grocery carts to be pushed back and forth without bumping over the curb and to permit people to walk without stepping up or down the curb. The architect, Mr. Pallardy, who testified for plaintiff, said that the ramps were provided for in the plans furnished to him. He had received a floor plan of the building, furnished by the Associated Wholesale Grocers, Inc., but had prepared all the details himself,

including those of the sidewalk and ramps, and had supervised the construction of the whole project. On cross-examination he testified that he considered that these ramps were a safe feature, made no objection, and saw nothing unsafe about them. He further testified that he saw nothing about their design or construction which led him to believe that a person would have any difficulty in "observing these ramps," and that he had no difficulty in seeing them; that he did not consider the question of color when the ramps were constructed, but that the roughness of the finish gives them a different appearance.

The plaintiff, married with grown children, went to this store (for the first time) with her husband on the afternoon of May 22, 1965, to get groceries. The day was clear and the sun was shining "brightly." The plaintiff was regularly employed at a local church to do cleaning and other similar work. Mr. Gilpin parked the car in the west part of the parking area and they entered at the west door. Plaintiff stated that she did not step up over a curbing, so she must have walked up a ramp like the one described without actually realizing it. They selected their groceries, putting them in a cart, and Mr. Gilpin then went out to his car. Plaintiff checked out the groceries, and a boy employed by defendant then started to push her cart to the car. They left the store by the east exit and walked north, the boy walking ahead with the cart. Plaintiff followed a short distance behind him. At a point near the curbline, and either on or at the bottom of the ramp, the boy stopped (with the cart ahead of him), turned, and asked plaintiff where her car was. She also stopped, perhaps a "couple of steps" behind the boy and just about at the beginning of the ramp. At one place in the record she testified that the boy was less than a foot from her. She pointed toward the car, the boy started up again, and she, the plaintiff, also started in the direction of the car, to the northwest. She took one or two steps, thus angling to the northwest (her left) and stepped with her right foot on the rounded, sloping west edge or "lip" of the ramp (or curb). This caused her foot to turn in and she fell forward striking her head against a steel column which was located about 2½ feet west of the west side of the ramp. She sustained substantial injuries but they need not be here described as they are not involved on this appeal. Plaintiff testified that she looked down as she started to walk again, after answering the boy's inquiry; that she looked right at the place where she was going to step, and stepped "right where I looked," but that all of the area in front of her looked just like a sidewalk on one level and that it looked as though she could walk right on out to the parking lot; that it was all concrete of the same color; that she saw no drop-off and no ramp.

Two women, customers of the store, testified that they were at the store on the day in question; that they came out of the same exit and turned left on the sidewalk. One testified that the sidewalk and the parking lot appeared to her to be level; the other testified that she saw "just a white bunch of concrete, just a level, it looked level to me," and that it appeared to be level from the sidewalk out to the parking lot.

Jack Robinson testified that he was manager of the store on the date plaintiff was injured; that he started "setting the store up" several weeks before the opening; that Frank Gerbes, president of defendant, was there on opening day and numerous times before; that it was probable that from 1,000 to 1,500 people entered the store each day.

At the close of plaintiff's evidence a motion for judgment in favor of defendant Supermarket Developers, Inc., was sustained. That corporation was stipulated to be the owner of the building, but it was not the operator. There is no contest on that ruling. The motion of the remaining defendant, Gerbes Supermarket, Inc., was overruled and it did not offer any evidence. The subsequent proceedings have already been stated.

As we have indicated, plaintiff, on this appeal, contends that the trial court erred in setting aside the verdict and entering judgment for defendant. A decision of that point requires that we consider the questions as to whether plaintiff (1) made a submissible case of negligence against defendant and (2) if so, whether she was guilty of contributory negligence as a matter of law. In the situation presented we will view the evidence in the light most favorable to plaintiff and give her the benefit of all favorable inferences arising therefrom.

■ It is conceded that plaintiff was an invitee on defendant's premises. And there is no dispute as to the rules of law applicable in a situation such as the one before us. In Restatement, Torts 2d, § 343, it is said that "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger." This court has stated the rule in more detail, as follows: "Defendant owed plaintiff-invitee the duty to exercise ordinary care to keep its premises reasonably safe for her use including the exercise of ordinary care to avoid causing injury to her while she was on defendant's premises properly engaged in the usual activities of a shopper following the procedures and using the facilities provided. The basis for liability in this type of case is a knowledge of the storekeeper of an unsafe condition or of a danger to a shopper, superior to that of the invitee. Consequently, the storekeeper must have actual or constructive knowledge of the danger and he is not liable for injury which results from a danger that is obvious or is or should be as well known to the invitee as to the storekeeper. And it follows, of course, that there is no duty on the storekeeper to warn if the danger is obvious or is or should be as well known to the invitee as to the inviter because a warning would not acquaint the invitee with any fact that he did not or should not know." Brown v. Kroger Co., Mo.Sup., 344 S.W.2d 80, 83.

■ We have concluded that plaintiff made a submissible case of negligence. We base this primarily on plaintiff's testimony to the effect that when she started walking again after the boy had inquired about the car she looked where she was going to step and stepped where she looked, but that all of the area looked like a sidewalk on one level; that she saw no ramp; that it looked like she could walk right on out to the parking lot. In deciding the question before us we think we must accept that testimony as true. We recognize, as a usual rule, that a person who looks at a ramp and curb would discern their true nature. However, this was new construction and, as one witness described it, it was "just a white bunch of concrete." It was also plaintiff's first visit to the store. In considering the type of testimony that may be considered as substantial evidence we have said that "[w]here testimony, beyond any reasonable doubt, is contrary to established physical facts or laws and facts of common knowledge it cannot be accepted as substantial evidence, Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, but courts are reluctant to say that declared facts are manifestly impossible or untrue, Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 326 Mo. 425, 31 S.W.2d 1010, and should not indulge in arbitrary deductions from physical laws and facts except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other conclusion." Garrison v. Ryno, Mo.Sup., 328 S.W.2d 557, 561. We should also mention that two ladies who visited the store the same day testified that they had substantially the same optical experience as they came out the east exit. In view of the

fact that three witnesses testified to the same result as they viewed the area involved it would be arbitrary indeed for us to rule that such was contrary to physical facts and so manifestly impossible that reasonable minds could not reach that conclusion. We are mindful that the architect who supervised this construction stated that he had no difficulty in observing the ramps but such is not binding on plaintiff since she had other contradictory evidence. Dodwell v. Missouri Pacific R. Co., Mo.Sup., 384 S.W.2d 643 [9], 11 A.L.R.3d 1156.

In Miles v. Ozark Bowl, Inc., Mo.App., 250 S.W.2d 849, a similar fact element was considered (in connection with other facts) in holding that plaintiff made a submissible case. There the plaintiff fell down a short flight of steps while moving along looking at a bowling scoreboard. She testified that the nature and color of the floor was such that she did not distinguish between the floor and the steps.

Defendant contends that plaintiff failed to prove that it knew or, in the exercise of ordinary care should have known, that the ramp was dangerous or was not sufficiently obvious for plaintiff to observe the same and hence defendant had no duty to warn. We do not agree. The sidewalk and ramps had been constructed several weeks before the date plaintiff was injured. The store manager and other employees began working in the store about April 1 in stocking it with merchandise and preparing for the opening. The condition of the walk and ramp was, of course, known to defendant as it was a part of the construction and a permanent installation. Moreover, defendant at least had constructive knowledge that the manner of construction would create the optical illusion experienced by plaintiff and the two other witnesses because its employees had ample opportunity to observe the area prior to the time of plaintiff's injury. That was a dangerous condition, constructively known to defendant, which was not obvious to plaintiff.

The evidence, as we view it, tends to prove that the defendant failed to use reasonable care to protect the plaintiff against the danger. The defendant should have given some meaningful warning to plaintiff and other customers. Among other things, the curbs could have been painted yellow or some other noticeable color to call attention to their presence and the difference in elevation. In this particular case, the defendant's employee could have warned the plaintiff of her proximity to the curb since they were angling to the northwest and obviously near to the western side of the ramp.

In addition to Miles, supra, we think the foregoing views are supported by Hoffman v. Kroger Company, Mo.App., 340 S.W.2d 152, and Daggs v. Patsos, Mo.App., 260 S.W.2d 794.

■ Defendant also contends that plaintiff was guilty of contributory negligence as a matter of law "in that she saw, or in the exercise of ordinary care should have seen, the ramp." In ruling that plaintiff made a submissible case we have actually ruled this contention adversely to defendant. This because we have held that we must accept plaintiff's testimony that she did not see the ramp or discern the difference in the level of the sidewalk and gutter. She could not be held to be guilty of contributory negligence as a matter of law unless the physical aspects of the area were obvious to her. We accordingly rule that the question of plaintiff's contributory negligence was an issue which was properly submitted to the jury.

We have examined all of the cases cited by defendant in support of its contentions but have found them to be distinguishable on the facts or, for some other reason, not to be persuasive.

The order of the trial court setting aside the verdict and entering judgment for the defendant is reversed. The order granting a new trial is affirmed and cause remanded.

FINCH, DONNELLY, SEILER and MORGAN, JJ., concur.

HENLEY, C. J., dissents in a separate dissenting opinion filed.

STORCKMAN, J., absent.

HENLEY, Chief Justice (dissenting).

I respectfully dissent.

In my judgment there is not sufficient substantial evidence to support an inference that the sidewalk and ramp constituted a condition which the invitor reasonably should have realized involved an unreasonable risk of harm to the invitee and which was not as obvious to the latter as to the former.

For this reason, I would affirm the judgment for defendant.